In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00059-CR
______________________________


EZEQUIEL GARZA GARZA, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 339th Judicial District Court
Harris County, Texas
Trial Court No. 908291


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Ezequiel Garza Garza appeals from his conviction, on his plea of guilty, to the offense of
unlawful possession of a firearm. Garza pled true to the enhancement, and the trial court assessed
his punishment at twenty years' imprisonment. Garza also has a pending appeal in a companion case,
in which he pled guilty to possession of marihuana of less than 2,000 pounds but more than fifty
pounds. In that case, he was sentenced to forty-five years' imprisonment. Garza has raised the same
contention in both appeals. 
Â Â Â Â Â Â Â Â Â Â Â Â In his sole point of error, Garza argues the trial court erred in overruling the motion to
suppress the evidence. For the reasons stated in our opinion in cause number 06-03-00058-CR,
decided this date, we likewise find his contention in this appeal to be without merit.
Â Â Â Â Â Â Â Â Â Â Â Â We note, though, that Garza was sentenced to twenty years' imprisonment for unlawful
possession of a firearm. After the denial of the motion to suppress, Garza pled guilty in open court
and pled true to the enhancement. The indictment alleges that Garza:
[H]eretofore on or about APRIL 9, 2002, did then and there unlawfully, intentionally
and knowingly possess a firearm, after having been convicted of a felony, namely,
POSSESSION OF A CONTROLLED SUBSTANCE WITH THE INTENT TO
DELIVER in the 351st District Court of HARRIS County, Texas, in Cause Number
662802 on JANUARY 13, 1995, and said possession of a firearm occurred before the
fifth anniversary of the Defendant's release from confinement following conviction
on APRIL 3, 1997.
Â 
Before the commission of the offense alleged above, on JANUARY 13, 1995,
in Cause No. 0662802 in the 351st District Court of Harris County, Texas, the
Defendant was convicted of the felony of Possession of a Controlled Substance with
the Intent to Deliver.

While the indictment alleged an enhancement, the same prior felony conviction is used as both an
element of the offense and as an enhancement. Prior conviction of a felony is an element of unlawful
possession of a firearm. The Texas Penal Code provides that:
(a) A person who has been convicted of a felony commits an offense if he
possesses a firearm:
(1) after conviction and before the fifth anniversary of the person's
release from confinement following conviction of the felony or the person's release
from supervision under community supervision, parole, or mandatory supervision,
whichever date is later; or
(2) after the period described by Subdivision (1), at any location other
than the premises at which the person lives.

Tex. Pen. Code Ann. Â§ 46.04 (Vernon Supp. 2004). Being previously convicted of a felony is an
element of unlawful possession. A conviction that was used to prove an element of the offense
cannot also be used to enhance the range of punishment. See, e.g., McWilliams v. State, 782 S.W.2d
871 (Tex. Crim. App. 1990); Ramirez v. State, 527 S.W.2d 542 (Tex. Crim. App. 1975); Henley v.
State, Nos. 05-02-01226-CR and 05-02-01227-CR, 2003 Tex. App. LEXIS 6685, at *8â9 (Tex.
App.âDallas Aug. 4, 2003, no pet.) (not designated for publication). Since the State does not allege
any prior conviction other than the conviction used as an element of the offense, Garza should not
have been subject to an enhancement for the charge of unlawful possession of a firearm.
Â Â Â Â Â Â Â Â Â Â Â Â The judgment indicates Garza was convicted of a third-degree felony and a finding of true
as to the enhancement. However, as discussed above, Garza was not subject to an enhancement. 
Unlawful possession of a firearm is a third-degree felony subject to not more than ten years' or less
than two years' imprisonment. See Tex. Pen. Code Ann. Â§ 12.34 (Vernon 2003), Â§ 46.04. Because
the maximum punishment was ten years, the trial court erred in sentencing Garza to twenty years. 
Â Â Â Â Â Â Â Â Â Â Â Â Because the error that we have found to exist relates solely to punishment, which was
assessed by the trial court, we reverse the judgment of the trial court as to the punishment and
remand this cause to the trial court to reassess appellant's punishment pursuant to Section 12.34 of
the Texas Penal Code, which provides for the range of punishment that may be assessed for an
individual found guilty of a third-degree felony. See Tex. Pen. Code Ann. Â§ 12.34. Â 
Â Â Â Â Â Â Â Â Â Â Â Â We affirm the judgment as to all other matters.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â March 12, 2004
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â March 18, 2004

Do Not Publish






" SemiHidden="false"
 UnhideWhenUsed="false" Name="Colorful Shading Accent 3"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-10-00080-CV

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  DANNY DIKE,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  PELTIER CHEVROLET, INC., Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the County
Court at Law No. 3

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Smith County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial Court
No. 57,614-B

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Opinion by Justice Moseley








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  O P I N I O N

Â 

Â Â Â Â Â Â Â Â Â Â Â  Peltier
Chevrolet, Inc., apparently upset with multiple lawsuits brought against it by
the Weinstein Law Firm, sought sanctions against Jeffrey Weinstein, the
principal in the firm, James Owen, his employee or associate, and Danny Dike,
their client.Â  This is an appeal from an
award of sanctions on behalf of Peltier against Weinstein, Owen, and Dike.

I.Â Â Â Â Â Â Â Â Â  FACTUAL AND PROCEDURAL
HISTORY

Â Â Â Â Â Â Â Â Â Â Â  Dike
had purchased a 2005 Chevrolet Colorado from Peltier on September 14, 2005; as
a part of the deal, Peltier had caused the financing to be arranged through a
retail installment transaction (the transaction).[1]Â  Over three years later (March 4, 2009), Dike
formally retained his attorneys to represent him with respect to certain claims
against Peltier arising from the transaction.Â 
On January 19, 2010, Dike filed his original petition alleging certain
promises were made by Peltier to him at the time of the transaction.Â  Dike alleged fraud, negligent
misrepresentation, money had and received, intentional infliction of emotional
distress, and promissory estoppel as a result of the 2005 automobile
purchase.Â  Attorneys Weinstein and Owen
were listed on the petition as representing Dike, but only Owen signed the
petition.Â  In his petition, Dike alleged
that PeltierÂs fraud Âwas inherently undiscoverable.ÂÂ  

Â Â Â Â Â Â Â Â Â Â Â  Thereafter,
on April 23, 2010, Peltier filed its traditional motion for summary judgment
alleging the statute of limitations barred DikeÂs claims.Â  Peltier maintained that DikeÂs causes of
action accrued in 2005 at the time of the transaction and, therefore, were all
barred by the relevant two-year and four-year limitations statutes.Â  Rather than filing a response to the motion
for summary judgment, Dike filed a motion to nonsuit his claims; those claims
were nonsuited without prejudice.Â  

Â Â Â Â Â Â Â Â Â Â Â  Peltier
then filed a motion for sanctions under Section 10.001 of the Texas Civil
Practice and Remedies Code and Rule 13 of the Texas Rules of Civil Procedure,
asserting that DikeÂs suit was frivolous and filed in bad faith for the purpose
of harassment.Â  Peltier argued that Dike
should have known his claims were barred by the statute of limitations.Â  The trial court conducted a hearing on the
motion for sanctions, in which Dike agreed his claims were subject to two- and
four-year statutes of limitations.Â  Dike
maintained, however, that because his claims were inherently undiscoverable and
information regarding his claims was fraudulently concealed from him, the
accrual of his claims did not begin until such time as they were
discovered.Â  

Â Â Â Â Â Â Â Â Â Â Â  The
trial court rejected this argument, primarily because Dike concedes he
discovered his claims in March 2009, some six months before the four-year
statute of limitations for his fraud claims expired.[2]Â  The trial court granted the motion and
sanctioned Dike, Owen, and Weinstein $15,353.00, representing PeltierÂs
attorneysÂ fees in defending DikeÂs claims.Â 
The sanctions were imposed jointly and severally against Dike and his
attorneys.Â  

II.Â Â Â Â Â Â Â  APPLICABLE LAW AND
STANDARD OF REVIEW

Â Â Â Â Â Â Â Â Â Â Â  We review the
imposition of sanctions under Chapter 10 of the Texas Civil Practice and
Remedies Code and Rule 13 of the Texas Rules of Civil Procedure for an abuse of
discretion.Â  Low v. Henry, 221 S.W.3d 609, 614 (Tex. 2007); Cire v. Cummings, 134 S.W.3d 835, 838 (Tex.
2004).Â  Under this standard, courts view
the evidence in the light most favorable to, and indulge every presumption in
favor of, the trial courtÂs action.Â  In re Liu, 290 S.W.3d 515, 519 (Tex.
App.ÂTexarkana 2009, orig. proceeding).Â 
ÂAn appellate court may reverse the trial courtÂs ruling only if the
trial court acted without reference to any guiding rules and principles, such
that its ruling was arbitrary or unreasonable.ÂÂ 
Low,Â  221 S.W.3d at 614.Â  A trial court abuses its discretion in
awarding sanctions only if the order is based on an erroneous assessment of the
evidence or the law.Â  DolenzÂ 
v. Boundy, 197 S.W.3d 416, 421
(Tex. App.ÂDallas 2006, pet. denied).

Â Â Â Â Â Â Â Â Â Â Â  Rule
13 authorizes the imposition of sanctions against an attorney, a represented
party, or both, who filed a pleading that is either: Â (1) groundless and brought in bad faith; or
(2) groundless and brought to harass.Â  Tex. R. Civ. P. 13; see also Rudisell v. Paquette, 89 S.W.3d 233, 236 (Tex. App.ÂCorpus
Christi 2002, no pet.).Â  The rule defines
ÂgroundlessÂ as having Âno basis in law or fact and not warranted by good faith
argument for the extension, modification, or reversal of existing law.Â Â Tex. R.
Civ. P. 13.Â  Sanctions may only be
imposed for good cause under Rule 13, the particulars of which must be stated
in the order. Â Tex. R. Civ. P. 13; Rudisell,
89 S.W.3d at 237.

Â Â Â Â Â Â Â Â Â Â Â  Similarly,
to award sanctions under Chapter 10, it must be shown that: Â (1) the pleading or motion was brought for an
improper purpose; (2) there were no grounds for the legal arguments advanced;
or (3) the factual allegations or denials lacked evidentiary support.Â  See Tex.
Civ. Prac. & Rem. Code Ann. Â§ 10.001 (Vernon 2002); Low, 221 S.W.3d at 614; Armstrong v. Collin County Bail Bond Bd.,
233 S.W.3d 57, 62 (Tex. App.ÂDallas 2007, no pet.).Â  Chapter 10 specifies that one of the aims for
imposition of sanctions for the filing of frivolous or groundless pleadings is
to Âdeter repetition of the conduct or comparable conduct by others similarly
situated.ÂÂ  Tex. Civ. Prac. & Rem. Code Ann. Â§ 10.004(b) (Vernon
2002).Â  We construe the phrase Âimproper
purposeÂ as the equivalent of Âbad faithÂ under Rule 13. Â See Tex.
R. Civ. P. 13; cf. Save Our
Springs Alliance, Inc. v. Lazy Nine
Mun. Util. Dist. ex rel. Bd. of Directors, 198 S.W.3d 300, 321 (Tex. App.ÂTexarkana
2006, pet. denied) (ÂnonfrivolousÂ requirement is same as Âgood faithÂ
requirement); Elwell v. Mayfield,
No. 10-04-00322-CV, 2005 WL 1907126, at *5 (Tex. App.ÂWaco Aug.Â 10, 2005,
pet. denied) (mem. op.) (same).Â  An order
imposing a sanction under Chapter 10 Âshall describe . . . the conduct the
court has determined violated Section 10.001 and explain the basis for the
sanction imposed.Â Â Tex. Civ. Prac. & Rem. Code Ann. Â§
10.005 (Vernon 2002).

Â Â Â Â Â Â Â Â Â Â Â  In
determining whether sanctions are appropriate, the trial court must examine the
facts available to the litigant and the circumstances existing when the
litigant filed the pleading.Â  Robson v. Gilbreath, 267 S.W.3d 401, 405
(Tex. App.ÂAustin 2008, pet. denied); Alejandro
v. Robstown Indep. Sch. Dist., 131 S.W.3d 663, 669 (Tex. App.ÂCorpus
Christi 2004, no pet.).Â  Courts should
presume parties and their counsel file all papers in good faith, and the party
seeking sanctions must overcome that presumption. Â See Tex.
R. Civ. P. 13; GTE CommcÂns Sys. Corp. v. Tanner, 856 S.W.2d 725, 731 (Tex.
1993).Â  The party seeking sanctions has
the burden of showing its right to relief.Â  Tanner, 856 S.W.2d at 731; Elkins v. Stotts-Brown, 103 S.W.3d 664,
668 (Tex. App.ÂDallas 2003, no pet.).Â  

III.Â Â Â Â Â Â  ANALYSIS OF POINTS OF
ERROR

Â Â Â Â Â Â Â Â Â Â Â  On appeal, Dike
claims (1) the trial court abused its discretion in assessing sanctions against
him, absent any evidence he did anything other than entrust legal
representation to his lawyers; (2) the trial court abused its discretion in assessing
sanctions against Weinstein absent evidence of his involvement in the petition
on which the sanctions order is founded; and (3) the trial court abused its
discretion in assessing any sanctions because the claims were not groundless
and had a nonfrivolous legal basis.Â  We
initially address DikeÂs contention that the trial court abused its discretion
in assessing sanctions based on the record before us.

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  The
Trial Court Erred in Assessing Sanctions Under Rule 13

Â Â Â Â Â Â Â Â Â Â Â  To
impose sanctions under Rule 13 of the Texas Rules of Civil Procedure, the
proponent of sanctions must establish that the suit was groundless and brought (1)
in bad faith or (2) for purposes of harassment.Â 
Tex. R. Civ. P. 13.Â  A pleading is groundless when it has no basis
in law or in fact. Â Tex. R. Civ. P. 13.

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  (1)Â Â Â Â Â Â Â  Peltier
Failed to Establish that DikeÂs Petition Was Groundless

Â Â Â Â Â Â Â Â Â Â Â  The party seeking sanctions has the
burden of showing his right to relief.Â  Tanner, 856 S.W.2d at 731.Â  Groundlessness turns on the legal merits of a
claim.Â  Robson, 267 S.W.3d at 405.Â  Thus, in order to establish DikeÂs claim was
groundless, Peltier had the burden of showing that the claim had no legal
merit, i.e., that DikeÂs claim had no basis in law or fact and was not
warranted by good faith argument for the extension, modification, or reversal
of existing law. Â Tex. R. Civ. P. 13. Â Further,
a lawsuit is Âgroundless,Â as used in Rule 13, if Âthere is no arguable basis
for the cause of action.ÂÂ  Attorney
Gen. of Tex. v. Cartwright, 874 S.W.2d 210, 215 (Tex. App.ÂHouston [14th
Dist.] 1994, writ denied).

Â Â Â Â Â Â Â Â Â Â Â  DikeÂs original
petition asserted, among other things, claims of fraud in connection with the
purchase of a motor vehicle from Peltier in an installment transaction.[3]Â  More specifically, the petition alleged that
Peltier made Âovert false statements of material factsÂ and failed to Âdisclose
material factsÂ required to be disclosed, and that the resulting harm was
inherently undiscoverable. Â The basis for
the imposition of sanctions rested primarily on the trial courtÂs finding that
the petition alleged time-barred causes of action, which, by definition, lacked
legal merit.[4]
Â In response to the motion for sanctions,
Dike relied on the discovery rule, alleging that the statute of limitations did
not begin to run on his claims until such time as they were discovered, said
claims being Âinherently undiscoverableÂ and fraudulently concealed by
Peltier.Â  

Â Â Â Â Â Â Â Â Â Â Â  Typically, a cause of
action accrues when a wrongful act causes some legal injury.Â  Provident Life & Accident Ins. Co. v.
Knott, 128 S.W.3d 211, 221 (Tex. 2003); S.V. v. R.V., 933 S.W.2d 1,
4 (Tex. 1996). Â In some types of cases,
the discovery rule may defer accrual of a cause of action until the plaintiff
knew or, by exercising reasonable diligence, should have known of the facts
giving rise to a cause of action.Â  HECI
Exploration Co. v. Neel, 982 S.W.2d 881, 886 (Tex. 1998).Â  In order for the discovery rule to apply, the
nature of the injury must be inherently undiscoverable and the injury itself
must be objectively verifiable. Â Id.[5]
Â An injury is inherently undiscoverable
if it is, by its nature, unlikely to be discovered within the prescribed
limitations period despite due diligence.Â 
Wagner & Brown, Ltd. v. Horwood, 58 S.W.3d 732, 734Â35
(Tex. 2001).Â  ÂThe requirement of
inherent undiscoverability recognizes that the discovery rule exception should
be permitted only in circumstances where Âit is difficult for the injured party
to learn of the negligent act or omission.ÂÂ Â Computer Assocs. IntÂl, Inc. v.
Altai, Inc., 918 S.W.2d 453, 456 (Tex. 1996) (quoting Willis
v. Maverick, 760 S.W.2d 642, 645 (Tex. 1988)). Â The discovery rule is an independent ground of
defense.Â  Barker v. Eckman, 213
S.W.3d 306, 312 (Tex. 2006).

Â Â Â Â Â Â Â Â Â Â Â  The Texas Supreme
Court has sometimes used the phrase Âdiscovery ruleÂ to refer generally to all
instances in which accrual is deferred, including fraud and fraudulent
concealment.Â  Williams v. Khalaf,
802 S.W.2d 651, 657 (Tex. 1990) (citing case that Âinvolved the Âdiscovery
ruleÂ since there was a claim of fraudulent concealmentÂ); Moreno v.
Sterling Drug, Inc., 787 S.W.2d 348, 351 (Tex. 1990) (citing fraud
case as one in which discovery rule applied).Â 
The Texas Supreme Court has, however, acknowledged the difference in
these theories:Â  ÂStrictly speaking, the
cases in which we have deferred accrual of causes of action for limitations
purposes fall into two categories:Â  those
involving fraud and fraudulent concealment, and all others.Â  The deferral of accrual in the latter cases
is properly referred to as the discovery rule.ÂÂ 
S.V., 933 S.W.2d at 4.Â  

Â Â Â Â Â Â Â Â Â Â Â  Even though the
discovery rule and the doctrine of fraudulent concealment each delay the
accrual of the cause of action, the reasons justifying each are different.Â  Horwood, 58 S.W.3d at 736.Â  The doctrine of fraudulent concealment works
to estop a defendant from asserting limitations as a defense because Âa person
cannot be permitted to avoid liability for his actions by deceitfully
concealing wrongdoing until limitations has run.Â Â S.V., 933 S.W.2d at 6; Slusser v.
Union Bankers Ins. Co., 72 S.W.3d 713, 719 (Tex. App.ÂEastland 2002, no
pet.).Â  An alleged misrepresentation may
be relevant to the equitable principles involved in a fraudulent concealment
analysis, but does not affect the determination of inherent undiscoverability
in a discovery rule analysis.[6]
Â Horwood, 58 S.W.3d at 736.Â  

Â Â Â Â Â Â Â Â Â Â Â  Where the discovery
rule applies, a cause of action does not accrueÂmeaning limitations does not
begin to runÂuntil discovery.Â  ÂAccrual
of a cause of action is deferred in two types of cases:Â  (1) those involving fraud or fraudulent
concealment and (2) those where the injury is Âinherently undiscoverableÂ and
is Âobjectively verifiable.ÂÂÂ  In re
Estate of Fawcett, 55 S.W.3d 214, 218Â19 (Tex. App.ÂEastland 2001, pet.
denied).Â  Moreover, in the discovery rule
context, a categorical approach is utilized to determine its
applicability.Â  Apex Towing Co. v.
Tolin, 41 S.W.3d 118, 122 (Tex. 2001).Â 
Using this approach, a court does not determine when a particular injury
was actually discovered in a particular case, but rather whether the case is
the type to which the discovery rule applies.Â 
Id.Â  The focus is on
whether a type of injury, rather than a particular injury was discoverable. Â Horwood, 58 S.W.3d at 736; Tolin,
41 S.W.3d at 122; Via Net v. TIG Ins. Co., 211 S.W.3d 310, 314
(Tex. 2006).Â  For example, the discovery
rule applies to cases involving fraud or fraudulent concealment. Â See Murphy v. Campbell, 964 S.W.2d 265,
270 (Tex. 1997); Salinas, 31 S.W.3d at 336.Â  Dike alleged the Âinherent undiscoverabilityÂ
of his injury as well as fraud and fraudulent concealment.[7]Â  Thus, the concept of delayed accrual of
DikeÂs cause of actionÂunder both theoriesÂwas alleged.[8]Â  

Â Â Â Â Â Â Â Â Â Â Â  Peltier contends that
DikeÂs claims were subject to two- and four-year limitations periods that
commenced with the September 2005 transaction.Â 
In his response to the motion for sanctions, Dike filed an affidavit
stating that he became aware of his claims against Peltier in March 2009, when
he sought the advice of his attorney.[9]
Â The petition was filed in January
2010.Â  Peltier alleges that this
evidence, on its face, establishes not only that (1) DikeÂs claims were
time-barred, but also (2) as a matter of law, the discovery rule does not apply
because Dike discovered his claims some six months prior to the running of the
four-year limitations period for fraud claims.[10]Â  Peltier, therefore, maintains that DikeÂs
claims were groundless because they were clearly barred by the statute of
limitations, and DikeÂs response to the motion for sanctions did not present
argument for a reasonable extension, modification, or reversal of existing
law.Â  

Â Â Â Â Â Â Â Â Â Â Â  We have not been
provided caselaw supporting the proposition that if a claim is discovered
inside the statute of limitations, it cannot, as a matter of law, be one that
is Âinherently undiscoverable.Â[11]Â  We find no such cases. Â If DikeÂs cause of action did not accrue until
it was discovered (here, after he had visited with his attorney), the discovery
within the usual period of limitations did not shorten the limitations period.[12]Â  Moreover, Peltier did not by its sanctions
motion address the discovery rule.Â 
During the hearing, PeltierÂs attorney argued that:

Â Â Â Â Â Â Â Â Â Â Â  They
then try to contend, well, but thereÂs fraud, yet, they present no evidence of
fraud with regard to this transaction to try to contend we didnÂt know or
couldnÂt know.Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â  And
so we get an additional four years from the time he went to see a lawyer to
file this lawsuit.Â  But thatÂs not how it
works.Â  When you know of the claims
within the statute of limitations, youÂre supposed to file within the statute
of limitations.Â  Well established
law.Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â  We
cannot agree this is well-established law in the discovery rule context.Â  This issue notwithstanding, there is a fair
amount of caselaw on the issue of whether a time-barred pleading is
sanctionable.Â  The sanctions order states
that because the petition alleged time-barred causes of action, it was signed
in violation of Rule 13 and Chapter 10.Â 
This issue has been addressed in certain contexts which are readily
distinguished from the case at bar.Â  

Â Â Â Â Â Â Â Â Â Â Â  For example, Peltier relies on Booth v. Malkan for the proposition
that: 

[W]here . . . the defenses
to the lawsuit are so clearly established and are defenses that one would
reasonably anticipate to be asserted in such a case, the evidence still may
support the trial courtÂs conclusion that the lawsuit is groundless and brought
in bad faith or groundless and brought for the purpose of harassment.

Â 

858 S.W.2d 641, 643Â44 (Tex.
App.ÂÂFort Worth 1993, writ denied).Â  In
that case, Booth withdrew from a partnership for the purpose of establishing
another business.Â  To that end, Booth
executed a withdrawal of partner and general release, which absolved him of all
liability with regard to the partnership.Â 
Ten years later, when the partnership was sold, Booth filed suit seeking
over $100,000.00 for his services to the partnership.Â  Booth testified that no new facts had come to
his attention concerning the matter other than the sale of the partnership
assets.Â  Booth further testified that he
signed the release for economic reasons and denied that he was forced to sign
it, as alleged in his petition. Â Id. at 643.Â  Under these facts, the lawsuit was held to be
groundless. Â Id. Â Booth is distinguished from this case inasmuch as suit was brought
ten years after the release was signed, no allegation of fraud or the
discoverability of BoothÂs claim was made, and Booth admitted making false
statements in his petition.Â  

Â Â Â Â Â Â Â Â Â Â Â  Dolenz affirmed the trial courtÂs
finding that plaintiffÂs time-barred claims were groundless and brought in bad
faith.Â  197 S.W.3d at 421Â22. Â In that case, the trial court granted BoundyÂs
motion for summary judgment on limitations grounds.Â  Thereafter, Boundy sought sanctions under Section
10.001 of the Texas Civil Practice and Remedies Code and Rule 13 of the Texas Rules
of Civil Procedure, arguing DolenzÂs suit was groundless and filed in bad faith
for the purpose of harassment.Â  The trial
court found that Dolenz had a law degree and was aware of the applicable
statute of limitations.Â  The tolling
provisions Dolenz asserted did not, on their face, apply to his case.[13]Â  Hence, the trial court did not abuse its
discretion in upholding the trial courtÂs sanctions order.Â  Dolenz is
distinguished from the case at bar because it involved claims the trial court
previously ruled on in BundyÂs motion for summary judgment.Â  Those claims, having been determined as a
matter of law on summary judgment to have been time barred, coupled with
facially inapplicable arguments for tolling the statute, are factors not
present in this case.[14]Â  

Â Â Â Â Â Â Â Â Â Â Â  Moreover, Dike has
alleged at least an arguable basis for the delayed accrual of the statute of
limitations, based on assertions of fraud, fraudulent concealment, and the
claim that PeltierÂs conduct was inherently undiscoverable.Â  While the record is not sufficiently
developed to permit an analysis of the facts supporting those allegations,
these types of allegations are recognized legal concepts, that if proven,
either toll the statute of limitations or delay the accrual of the cause of
action, as previously discussed.Â  This
Court takes no position on whether DikeÂs claims against Peltier are barred by
limitations; we hold only that Peltier failed to carry its burden to establish
DikeÂs claim was groundless.[15]

(2)Â Â Â Â Â Â Â  Peltier
Failed to Establish that DikeÂs Lawsuit Was Brought in Bad Faith or for
Purposes of Harassment

Â 

Â Â Â Â Â Â Â Â Â Â Â  Because Peltier failed
to establish bad faith or harassment as a motive for filing the petition, Rule
13 sanctions would not be warranted even if DikeÂs petition was
groundless.Â  See Tex. R. Civ. P. 13.Â  The burden is on the party moving for
sanctions to overcome the presumption that the pleading was filed in good
faith.Â  Tanner, 856 S.W.2d at 731.Â  A groundless pleading is not sanctionable
unless it is also brought in bad faith or for the purpose of harassment.Â  Id.Â 
Bad faith does not exist when a party exercises bad judgment or
negligence.Â  Rather, bad faith means Âthe
conscious doing of a wrong for dishonest, discriminatory, or malicious
purposes.Â Â Campos, 879 S.W.2d at 71;
Mattly v. Spiegel, Inc., 19 S.W.3d 890, 896 (Tex.
App.ÂHouston [14th Dist.] 2000, no pet.).Â  

Â Â Â Â Â Â Â Â Â Â Â  In deciding whether a
pleading was filed in bad faith or for the purpose of harassment, the trial
court must measure a litigantÂs conduct at the time the relevant pleading was
signed.Â  Texas-Ohio Gas, Inc.
v. Mecom, 28 S.W.3d 129, 139 (Tex. App.ÂTexarkana 2000, no pet.).Â  RuleÂ 13 generally requires that the
trial court hold an evidentiary hearing to make a determination about the
motives and credibility of the person signing the petition.Â  R.M. Dudley Constr. Co. v. Dawson, 258
S.W.3d 694 (Tex. App.ÂWaco 2008, pet. denied); see, e.g., Low,
221 S.W.3d at 613, 617 (referring to trial courtÂs evidentiary hearing on
motion for Chapter 10 sanctions).Â  

Â Â Â Â Â Â Â Â Â Â Â  The only evidence
introduced at the sanctions hearing was two exhibits offered by Peltier.Â  Exhibit one consists of a series of eleven
petitions and corresponding nonsuits filed against Peltier Chevrolet, Inc., and
related entities, by the Weinstein law firm.[16]
Â Exhibit two consists of a series of
eight petitions and corresponding nonsuits filed by the Weinstein law firm
against Peltier Enterprises, Inc., d/b/a Peltier Nissan, an entity related to
Peltier Chevrolet, Inc.[17]Â  These exhibits were admitted for the purpose
of showing bad faith in the filing of DikeÂs lawsuit.Â  In referring to these exhibits at the
sanctions hearing, counsel for Peltier stated:

[A]nd why we know these lawsuits are frivolous is
we have brought a number of non-suits which have been filed in the very recent
past by this law firm against Peltier Chevrolet with basically the same type
allegation . . . .Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â  Because
the trial court took judicial notice of Âthe pattern and practice of the
Attorneys in similar cases,Â[18]
Peltier maintains that the filings and nonsuits included in these exhibits are
circumstantial evidence that DikeÂs petition was filed in bad faith.Â  The record fails to reflect that the trial
court took judicial notice of anything other than the filings contained in
exhibit one.Â  The issue presented,
therefore, is whether the petitions and nonsuits filed by the Weinstein law
firm on behalf of other clients against Peltier and a related entity are,
standing alone and in and of themselves, evidence of bad faith in the filing of
the petition in the Dike case.Â  Certainly, the fact that other, similar
lawsuits were filed and subsequently nonsuited gives cause for concern that
those lawsuits lacked merit and were filed for the purpose of harassment.Â  If at least some of the other suits had been
shown to be without merit or brought for the purpose of harassment, then the
logical inference could then be that the lawsuit filed on behalf of Dike were
of a like kind.Â  Because the record shows
the filing of the previous lawsuits and their subsequent dismissals through nonsuits,
but is totally devoid of evidence relating to impermissible circumstances
concerning these actions, the trial court could not infer they were brought in
bad faith.Â  Any subsequent inference that
the Dike petition was brought in bad faith is without evidentiary support.Â  

Â Â Â Â Â Â Â Â Â Â Â  Rule
162 of the Texas Rules of Civil Procedure provides that a plaintiff may dismiss
its case at any time before it has introduced all of its evidence.Â  Tex.
R. Civ. P. 162.Â  A ÂplaintiffÂs
right to take a nonsuit is unqualified
and absolute as long as the defendant has not made a claim for affirmative
relief.ÂÂ  BHP Petroleum Co. v. Millard, 800 S.W.2d 838, 840 (Tex. 1990).Â  Plaintiffs decide to nonsuit for a variety of
reasons, many having nothing to do with the merits of the litigation.Â  Here, there is no evidence relating to the
circumstances or timing of the other petitions followed by nonsuits.Â  Peltier did not question DikeÂs attorneys
about the circumstances surrounding the other cases, and did not call any party
involved in the other cases to explain the reasons for the nonsuits. Â It may well be that if the record had been
more fully developed in this regard, ample evidence of bad faith may well have
been established.Â  We cannot infer from
this scant evidence a pattern and practice of filing petitions and nonsuiting
same after the filing of a motion for summary judgment.Â  In short, there is no evidence in the record
tying the filings in exhibits one and two to the merits of the sanctions order
in this case.[19]
Â As a result, we do not find the evidence
offered at the sanctions hearing to be relevant to the issue of bad faith in
filing the petition by Dike against Peltier.

Â Â Â Â Â Â Â Â Â Â Â  Moreover,
in the absence of evidence of DikeÂs motive in nonsuiting his petition, the
simple fact he filed a nonsuit after Peltier filed a motion for summary
judgment is not evidence of bad faith or harassment. Â Because neither Dike nor his counsel were
called to testify regarding the reasons for taking a nonsuit, there is no
evidence in the record regarding the motive in filing the nonsuit.Â  Dike could have nonsuited his claims for a
variety of reasons.Â  The Houston Fourteenth
Court of Appeals recognized this reality in Mattly,
19 S.W.3d at 896Â97, where the plaintiff nonsuited her claims after the
defendant sought summary judgment.Â  In
that case, Mattly testified at the sanctions hearing that she could no longer
afford to continue her lawsuit.Â  Because
the record contained no evidence to show that Mattly acted in bad faith by filing
a nonsuit, the court was unwilling to find that the filing of a nonsuit is, in
and of itself, evidence of bad faith.Â  Id.Â 
Likewise, there is no evidence in this case that Dike acted in bad faith
by filing a nonsuit.Â  The fact that Dike
filed a nonsuit is not, standing alone, evidence of bad faith.[20]Â  See id.
at 897.

Â Â Â Â Â Â Â Â Â Â Â  Peltier
further maintains bad faith is evidenced here because DikeÂs attorneys failed
to make reasonable inquiry regarding the statute of limitations before filing
suit.Â  Here, limitations is a
particularly important issue since the sanctions order finds that filing the
petition outside of the statute of limitations amounts to sanctionable
conduct.Â  We have previously discussed
the cases Peltier relies on to support its claim that the filing of a case
outside of the statute of limitations is sufficient to support sanctions.Â  The conduct in each of those cases, when
taken together with the time-barred claim, was sufficient to support sanctions.[21]Â  Here, there is no evidence of questionable conduct.[22]Â  

Â Â Â Â Â Â Â Â Â Â Â  Rule
13 requires sanctions based on the acts or omissions of the represented party
or counsel, and not merely on the legal merit of the pleading.Â  Parker
v. Walton, 233 S.W.3d 535, 539 (Tex. App.ÂHouston [14th Dist.] 2007, no
pet.).Â  This is true because improper
motive is an essential element of bad faith.Â 
Elkins, 103 S.W.3d at 669; Alejandro v. Bell, 84 S.W.3d 383, 393
(Tex. App.ÂÂCorpus Christi 2002, no writ) (no evidence presented at sanctions
hearing from which the trial court could determine lawsuit filed in bad
faith).Â  Here, the petition was not
merely filed outside of the limitations period; there was a dispute regarding
the application of the discovery rule.Â  Because
Peltier had the burden of proving bad faith, it was incumbent that Peltier
provide some proof of improper motive at the sanctions hearing. Â See
Randolph v. Jackson Walker, L.L.P.,
29 S.W.3d 271, 277 (Tex. App.ÂHouston [14th Dist.] 2000, pet. denied) (ÂBecause
appellees had the burden to establish that sanctions were justified, it was
Âimperative for the trial court to convene and conduct an evidentiary
hearing.ÂÂ).Â  Peltier claims this proof
is evident in the fact that Dike could not have made reasonable inquiry into
the applicability of the statute of limitations, or he would not have filed the
suit.Â  Conversely, Peltier contends that
if Dike filed the petition after having made reasonable inquiry into the
statute of limitations, this is evidence of bad faith.Â  We reject this circuitous argument.Â  If counsel conducted legal research that led
to the conclusion that either the discovery rule or the doctrine of fraudulent
concealment salvaged DikeÂs claims, does that amount to bad faith?Â  We do not believe that it does.Â  If counsel was incorrect in that conclusion,
this may amount to poor judgment, but poor judgment does not equate to bad
faith.Â  Campos, 879 S.W.2d at 71.Â  

Â Â Â Â Â Â Â Â Â Â Â  While we
recognize circumstantial evidence will suffice to allow a trial court to infer
bad faith and improper motive, we do not believe that circumstantial evidence
is present in this case.Â  The record does
not reflect what inquiry was made regarding the statute of limitations and the
application of the discovery rule. Â As
the party having the burden of proof at the sanctions hearing, Peltier could
have easily called counsel to testify regarding what inquiry, if any, was made
with respect to the application of the discovery rule before filing the
petition.Â  It may well be that no such
inquiry was made, but we cannot draw that inference from a silent record.Â  We find that Peltier failed to establish bad
faith or harassment in the filing of DikeÂs petition.

B.Â Â Â Â Â Â Â  The
Trial Court Erred in Assessing Sanctions Under Chapter 10 of the Texas Civil
Practice and Remedies Code

Â 

Â Â Â Â Â Â Â Â Â Â Â  Peltier
maintains that even if sanctions cannot be imposed under Rule 13, this Court
should affirm the imposition of sanctions under Chapter 10.Â  Chapter 10 provides that:

Â Â Â Â Â Â Â Â Â Â Â  The
signing of a pleading or motion as required by the Texas Rules of Civil
Procedure constitutes a certificate by the signatory that to the signatoryÂs
best knowledge, information, and belief, formed after reasonable inquiry:

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  (1)Â Â Â Â Â Â Â  the pleading or motion is not being
presented for any improper purpose, including to harass or to cause unnecessary
delay or needless increase in the cost of litigation;

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  (2)Â Â Â Â Â Â Â  each claim, defense, or other legal
contention in the pleading or motion is warranted by existing law or by a
nonfrivolous argument for the extension, modification, or reversal of existing
law or the establishment of new law;

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  (3)Â Â Â Â Â Â Â  each allegation or other factual
contention in the pleading or motion has evidentiary support or, for a
specifically identified allegation or factual contention, is likely to have
evidentiary support after a reasonable opportunity for further investigation or
discovery; and

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  (4)Â Â Â Â Â Â Â  each denial in the pleading or motion of
a factual contention is warranted on the evidence or, for a specifically
identified denial, is reasonably based on a lack of information or belief.

Â 

Tex.
Civ. Prac. & Rem. Code Ann. Â§ 10.001.[23]Â  The trial court found that the petition was
signed for an improper purpose and that its implicit assertion that the lawsuit
was timely filed under the applicable statutes of limitations was frivolous
because it was not warranted by existing law, had no basis in fact, or was
unlikely to have any basis in fact.[24]Â  

Â Â Â Â Â Â Â Â Â Â Â  Although
Rule 13 requires a party to have filed a groundless pleading brought in bad
faith or a groundless pleading for harassment, sanctions under Chapter 10 can
be awarded if the suit was filed for an improper purpose, even if the suit was
not frivolous. Â Save Our Springs
Alliance, Inc., 198 S.W.3d
at 321. Â Compare Tex. R. Civ. P. 13 with Tex. Civ. Prac. & Rem. Code Ann. Â§Â 10.001.Â  We construe the phrase Âimproper purposeÂ as
the equivalent of Âbad faithÂ under RuleÂ 13. Â See Tex.
R. Civ. P. 13; Save Our Springs
Alliance, Inc., 198 S.W.3d at
321.Â  For the reasons stated earlier in
this opinion, there is no evidence of an improper purpose.

Â Â Â Â Â Â Â Â Â Â Â  Under
Section 10.001, the signer of a pleading certifies that each claim and
allegation is based on the signatoryÂs best knowledge, information, and belief,
formed after reasonable inquiry.Â  Low, 221 S.W.3d at 615.Â  Each allegation and factual contention in a
pleading must have, or be likely to have, evidentiary support after a
reasonable investigation.Â  Id.Â 
In Low, the Texas Supreme
Court found sanctions were justified when the petition claimed physicians
prescribed the drug Propulsid to White.Â 
WhiteÂs attorney was in possession of WhiteÂs medical records before he
filed the lawsuit; those records did not indicate that the physicians
prescribed or administered the drug to White.Â 
Id. at 616.Â  Further, both physicians filed affidavits
swearing that they did not in any way provide Propulsid to White.Â  Id.
at 617.Â  The evidence, therefore,
supported the trial courtÂs conclusion that the allegations against the
physicians were without evidentiary support.Â 


Â Â Â Â Â Â Â Â Â Â Â  In
this case, as previously discussed, the only evidence offered at the sanctions
hearing was other lawsuits and corresponding nonsuits filed by DikeÂs attorneys,
together with the nonsuit filed by Dike.Â 
We have previously determined this evidence, standing alone, does not
support a finding that DikeÂs pleading was filed in bad faith.Â  Thus, in order to find DikeÂs petition lacked
legal or factual support at the time it was filed, the trial court could only
have relied on the petition itself and/or DikeÂs affidavit.Â  

Â Â Â Â Â Â Â Â Â Â Â  The
petition alleged fraud and the inherent undiscoverability of DikeÂs claim.Â  DikeÂs affidavit stated that he became aware
of his claims in March 2009.Â  For the
reasons previously discussed, this information, standing alone, is not evidence
that DikeÂs claims were not warranted by existing law or that those claims lack
a factual basis or were unlikely to lack a factual basis.Â  Unlike Low,
where evidence was presented that the plaintiffÂs claims did not have a factual
basis, there is no such evidence in this case.Â 
That is not to say that such evidence does not existÂbut it was not
presented to the trial court.Â  Under
Chapter 10, DikeÂs attorneys certified he made a reasonable inquiry into all of
the allegations and certified that all the allegations had evidentiary support,
or were likely to have evidentiary support.Â 
There is no evidence that such reasonable inquiry was not made, and the fact that the petition
and affidavit show the claims were discovered inside the statute of limitations
does not evidence the failure to make reasonable inquiry.Â  We conclude the trial court abused its
discretion in concluding Chapter 10 was violated in this instance.

Â Â Â Â Â Â Â Â Â Â Â  C.Â Â Â Â Â Â Â  Sanctions
Against Dike and Weinstein 

Â Â Â Â Â Â Â Â Â Â Â  In
his remaining two points of error, Dike claims that even if sanctions were
properly assessed against Owen (who signed the pleadings in DikeÂs case)
neither he nor Weinstein should have been sanctioned.Â  Because we find error in the imposition of
sanctions under Rule 13 and Chapter 10 and this is dispositive, it is not
necessary for us to address these issues.Â 


IV.Â Â Â Â Â Â  CONCLUSION

Â Â Â Â Â Â Â Â Â Â Â  For the reasons stated herein, we
reverse the trial courtÂs order imposing sanctions against Owen, Dike, and Weinstein
and render judgment that no sanctions be imposed.

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Bailey
C. Moseley

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  March 9, 2011

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  April 1, 2011











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.Â  See Tex. GovÂt Code Ann.
Â§ 73.001 (Vernon 2005).Â  We are unaware
of any conflict between precedent of the Twelfth Court of Appeals and that of
this Court on any relevant issue.Â  See Tex.
R. App. P. 41.3.





[2]The
following exchange took place at the hearing between the trial court and the
attorney for Dike:

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  THE
COURT:Â  Well, let me ask you this: Â Discovery Rule cases -- are there any
Discovery Rule cases that say when a person discovers a claim within the
limitations period but then doesnÂt assert the claim within the limitations
period, somehow that buys them an extra four years or an extra two years?

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MR.
WALSH:Â  I havenÂt seen the case law.





[3]The
factual background set forth in the petition is less than crystal clear, but
generally alleges that Peltier committed fraud in connection with
representations made and information withheld regarding the financing terms of
DikeÂs purchase, which were arranged and implemented by Peltier.Â  

Â 





[4]The
sanctions order includes findings in support of sanctions under Section 10.004
of the Texas Civil Practice and Remedies Code, Rules 13 and 215 of the Texas
Rules of Civil Procedure, and the courtÂs inherent power:

Â 

1.Â Â Â Â Â Â Â Â Â Â Â Â  Plaintiff entered into the
transaction forming the basis of the above-captioned suit on September 14,
2005.Â  Plaintiff executed an attorney-fee
agreement with his counsel on March 4, 2009.Â 
The applicable statutes of limitations ran, . . . on all the causes of
action Plaintiff and his attorneys asserted in the Original Petition of the
above-captioned suit on September 14, 2009.Â 
Plaintiff and PlaintiffÂs counsel filed the Original Petition on January
19, 2010.Â  Thus, Plaintiff and PlaintiffÂs
counsel alleged time-barred causes of action in the Original Petition.

Â 

2.Â Â Â Â Â Â Â Â Â Â Â Â  The Original Petition was thus
signed in violation of section 10.001 of the Texas Civil Practice and Remedies
Code and Texas Rule of Civil Procedure 13.

Â 

3.Â Â Â Â Â Â Â Â Â Â Â Â  Plaintiff and his attorneysÂ
implicit assertion in the Original Petition that the lawsuit was timely-filed
under the applicable statutes of limitations is frivolous because it was (1)Â presented
for the purpose of harassment, (2) was not warranted by law, and/or (3) had no,
and was unlikely to have any, basis in fact.

Â 

4.Â Â Â Â Â Â Â Â Â Â Â Â  Plaintiff and his attorneysÂ
implicit assertion in the Original Petition that the lawsuit was timely-filed
under the applicable statutes of limitations is groundless because it had no
basis in law or fact and was not warranted by a good faith argument for
extension, modification, or reversal of existing law.

Â 

5.Â Â Â Â Â Â Â Â Â Â Â Â  A reasonable inquiry into the
applicable statutes of limitations and into the basic operative facts of this
lawsuit shows that the Original Petition was time-barred when filed and that no
basis exists for filing suit.

Â 

6.Â Â Â Â Â Â Â Â Â Â Â Â  Plaintiff and his attorneys did not
make a reasonable, duly diligent inquiry into the aforementioned law and facts
before filing the Original Petition.Â 
PlaintiffÂs attorneys could have readily obtained the requisite
knowledge to ascertain that the lawsuit was time-barred by speaking to their
client and reviewing the installment sales contract at issue.

Â 

7.Â Â Â Â Â Â Â Â Â Â Â Â  PlaintiffÂs attorneys regularly
file similar lawsuits against automobile dealership [sic] across Texas in Texas
courts and thus have extensive working knowledge of the statutes of limitations
applicable to the causes of actions asserted in PlaintiffÂs Original
Petition.Â  For the same reason, PlaintiffÂs
attorneys are charged with knowledge of such statutes of limitations.

Â 

8.Â Â Â Â Â Â Â Â Â Â Â Â  Any additional facts adduced
hereafter in discovery or otherwise are highly unlikely to establish a basis
for filing this time-barred lawsuit.

Â 

9.Â Â Â Â Â Â Â Â Â Â Â Â  Plaintiff
and his attorneys have made no reasonable, good-faith argument for the
extension, modification, or reversal of existing law.Â  Further, it is highly unlikely that this or
any Court would entertain an argument for an extension, modification, or
reversal of the well-established statutes of limitations.

Â 

10.Â Â Â Â Â Â Â Â Â  Plaintiff and his attorneys engaged in
bad faith and/or harassing behavior by ignoring law and facts that were known
to themÂfacts which showed the lawsuit was time-barredÂand proceeding to file
suit nonetheless.Â  

Â 

11.Â Â Â Â Â Â Â Â Â  Plaintiff and his attorneysÂ
groundless, frivolous, and bad-faith/harassing assertion of this time-barred
lawsuit against Defendant abused the judicial and legal process.Â  This conduct, along with PlaintiffÂs
attorneysÂ and firmÂs wider campaign of filing similar baseless suits against
Defendant and other car dealerships across Texas significantly impedes this
CourtÂs ability to conduct its core functions because it congests the CourtÂs
docket with motions and other pleadings relating to the statute of limitations
issue and otherwise increases the costs of litigation.

Â 

12.Â Â Â Â Â Â Â Â Â  Sanctions will be necessary to
necessary to [sic] deter, alleviate, and counteract PlaintiffÂs attorneysÂ bad
faith abuse of the judicial process.

Â 

13.Â Â Â Â Â Â Â Â Â  There is a direct relationship between
the sanction and the offensive conduct described above.Â  The sanctions of reasonable costs, attorneyÂs
fees, and other expenses incurred in responding to the filing of the
time-barred Original Petition directly address the harm and inconvenience caused
by the frivolous, groundless and bad faith and/or harassing nature of the
implicit assertion in such petition that the claims were timely filed in
accordance with governing statutes of limitations.

Â 

14.Â Â Â Â Â Â Â Â Â  The sanctions imposed are no more
severe than necessary to promote full compliance with the rules.Â  The evidence shows that the sanctions awarded
will reasonably offset the costs, attorneyÂs fees, and expenses incurred by
Defendant as a direct result from having to respond to PlaintiffÂs attorneysÂ
frivolous, groundless pleading.

Â 

15.Â Â Â Â Â Â Â Â Â  For these reasons, there is good cause
to support the imposition of sanctions.

Â 





[5]Peltier
complains that Dike failed to plead that his injury was objectively verifiableÂthe
second element of the discovery ruleÂand claims that this omission is
sufficient to uphold the trial courtÂs finding as to the discovery rule. (The
trial court did not make an explicit finding regarding application of the
discovery rule; rather, the trial court opined, ÂAny additional facts adduced
hereafter in discovery or otherwise are highly unlikely to establish a basis
for filing this time-barred lawsuit.Â).Â 
Peltier specially excepted to DikeÂs discovery rule pleading, but failed
to obtain a hearing on its special exceptions.Â 
DikeÂs pleadings are, therefore, liberally construed in his favor.Â  See
Horizon/HMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 897 (Tex. 2000).Â  DikeÂs failure to plead each element of the
discovery rule might have constituted the basis for an order compelling him to
re-plead, but does not render fatal his reliance on the discovery rule to avoid
sanctions.





[6]In spite of this distinction, these
concepts continue to be utilized more or less interchangeably. Â Murphy
v. Campbell, 964 S.W.2d 265, 270 (Tex. 1997); Salinas v. Gary Pools,
Inc., 31 S.W.3d 333, 336 (Tex. App.ÂÂSan Antonio 2000, no pet.) (discovery
rule applies to cases involving fraud and fraudulent concealment).

Â 





[7]Peltier
relies on caselaw decided in a summary judgment context to assert that Dike had
the burden of proving the elements of fraudulent concealment to avoid the
statute of limitations.Â  We reject this
argument in the context of a motion for sanctions.Â  Peltier further maintains that given a Âchorus
of legal authorityÂ that a car dealership is not required to disclose profits
it makes in the sale of a vehicle, there can be no doubt that DikeÂs lawsuit
was sanctionable.Â  Because this
allegation, which speaks to the merits of DikeÂs claim, did not comprise any
portion of the trial courtÂs findings with respect to the imposition of
sanctions, we do not address it.Â  

Â 





[8]In Archer v. Nissan Motor Acceptance Corp.,
550 F.3d 506, 507Â08 (5th Cir. 2008), the plaintiffs brought various claims
alleging the dealer made misrepresentations concerning their purchase of an
automobile.Â  Applying Mississippi law to
determine whether the injury was ÂlatentÂ so that limitations did not run, the
court ruled as a matter of law that the car dealerÂs alleged misrepresentations
were discoverable because plaintiffs had the ability to research the deal they
were receiving on their own.Â  Peltier
relies on Archer to assert Dike failed to exercise due diligence in
discovering the alleged fraud.Â  Because Archer
applies Mississippi law rather than Texas law, we do not find this case to
be controlling.Â  Â 

Â 





[9]Peltier
directs us to the case of Harper v. Mac
Haik Ford, Ltd., No. 01-09-01144-CV, 2010 WL 2650543, at *4Â5 (Tex.
App.ÂÂHouston [1st Dist.] July 1, 2010, no pet.) (mem. op.), in support of its
assertion that DikeÂs affidavit does not present evidence that his injury was
inherently undiscoverable.Â  In that case,
also brought by the Weinstein law firm, the person signing the affidavit
stated, ÂI was not aware of my claims against [the car dealership] until such
time as I sought legal advice from my attorney.ÂÂ  Id.
at 4.Â  In that case, Harper alleged
application of the discovery rule in response to a motion for summary judgment
filed by the car dealership.Â  The court
held that Harper did not raise a fact issue about the discovery rule so as to
toll limitations beyond the date of the purchase, with a statement that she
learned of her claim when she consulted her attorney on an unidentified date.Â  Id.
at *5.Â  Aside from the obvious difference
in DikeÂs affidavitÂwhich alleged a date on which he consulted his attorneyÂHarper involved a summary judgment
proceeding wherein Harper bore the burden of raising a fact issue regarding
application of the discovery rule.Â 
Because this case involves a sanctions motion, in which Peltier bore the
burden of proving DikeÂs claim was groundless, Harper is not applicable here.

Â 





[10]See Tex.
Civ. Prac. & Rem. Code Ann. Â§ 16.004(a)(4) (Vernon 2002).

Â 





[11]Peltier
relies on Fightertown, Inc. v. K-C
Aviation, Inc., No. 05-96-01998-CV, 1999 WL 701491, at *4 (Tex.
App.ÂÂDallas Sept. 10, 1999, pet. denied) (not designated for publication), in
support of the proposition that discovery of injury within the statute of
limitations showed that the injury at issue was not the type to which the
discovery rule applies.Â  Fightertown, however, concerned a very
different factual scenario, involving a dispute concerning the adequacy of a
paint job on an airplane.Â  The discovery
at issue occurred when the plaintiff observed signs of corrosion emerging from
underneath the plane.Â  The Dallas Court
of Appeals correctly observed that the proper inquiry in a discovery rule case
is whether the general nature of the wrongful act complained of is inherently
undiscoverable.Â  Id. at *3.Â  An improper paint
job was not inherently undiscoverable within the prescribed limitations period
so as to justify application of the discovery rule.Â  In Fightertown,
the plaintiff discovered facts suggesting its cause of action within about a
year of having the plane painted.Â  Id. at *1.Â  The court, therefore, concluded that this
fast and simple discovery of damage, visible to the naked eye, suggested the
claims were not inherently undiscoverable.Â 
Id. at *4. Â Fightertown does not stand
for the broad proposition that discovery of an injury within the limitations
period bars application of the discovery rule as a matter of law.

Â 





[12]If
one were to assume that discovery of an injury during the limitations period
placed the burden on the injured party to file suit within the usual
limitations period and assuming a four-year period of limitations, a person who
discovered an injury on the third year and 364th day after the injury occurred
would be forced to file a lawsuit within one day or be thereafter barred.





[13]Dolenz
argued his claims were tolled because he was in prison.Â  At the time of his claim, imprisonment was
deleted from the definition of legal disability.Â  Next, Dolenz argued his claims were tolled
because of physical disabilities.Â  The
court determined that legal disability did not include physical
impairment.Â  Finally, Dolenz argued his
claims were tolled due to his absence from the state.Â  The court held this tolling provision only
applied to defendants, rather than plaintiffs.Â 
Dolenz, 197 S.W.3d at 420Â21.Â  Each of these matters was decided by the
court as a matter of law in ruling on BundyÂs motion for summary judgment.Â  

Â 





[14]Other
cases cited by Peltier in support of the proposition that a petition which
asserts time-barred claims is groundless include Stromberger v. Turley, No. 05-04-00050-CV, 2005 WL 701034 (Tex.
App.ÂÂDallas Mar. 28, 2005, no pet.) (mem. op.) (trial court granted summary
judgment finding StrombergerÂs Deceptive Trade Practices Act (DTPA) claims
barred by limitations and imposed sanctions for filing time-barred claim;
evidence showed Stromberger lied about his claimed communications with attorney
in support of tolling argument); Walston
v. Lockharat, No.Â 10-03-00183-CV, 2005 WL 428433 (Tex. App.ÂÂWaco Feb.
23, 2005, pet. denied) (mem. op.) (after 1994 divorce, plaintiff appealed
property division; thereafter plaintiff brought numerous suits variously
alleging fraud by receiver in sale of property; plaintiff alleged discovery
rule applied to toll statute of limitations because fraud not discovered until
1999, when she attempted to collaterally attack judgment in trespass to try
title suit, which failed; a bill of review filed in 2003, again alleging order
of sale was void; under these facts, trial court did not abuse discretion in
dismissing case with prejudice); Bohls v.
Oakes, 75 S.W.3d 473 (Tex. App.ÂÂSan Antonio 2002, pet. denied) (award of
attorneyÂs fees to party joined in DTPA claim and nonsuited before trial upheld
where virtually no evidence company was involved save for a few invoices on
their letterhead and limitations had run when party was joined); Almanza v. TranscontÂl Ins. Co., No.
05-97-01612-CV, 1999 WL 1012959 (Tex. App.ÂÂDallas Nov. 8, 1999, pet. denied)
(not designated for publication) (lawsuit against Transcontinental dismissed
with prejudice as sanction for violating Rule 13 of the Texas Rules of Civil
Procedure; party reasserted claims previously disposed of by summary judgment;
the claims were barred by res judicata, collateral estoppel, and/or statute of
limitations); Campos v. Ysleta Gen.
Hosp., Inc., 879 S.W.2d 67 (Tex. App.ÂÂElÂ Paso 1994, writ denied)
(directed verdict granted in wrongful death lawsuit affirmed on appeal, as
there was no evidence that act or omission of defendant caused death; second
suit thereafter filed for survival cause of action, although not brought by
estate; trial court granted summary judgment based on judicial estoppel and
statute of limitations and imposed sanctions; under these facts, imposition of
sanctions affirmed).Â  Each of these cases
is easily distinguished from the case at bar:Â 
in some, summary judgment was granted on limitations; in others, there
was proof of outright deception; and in others, the facts clearly show abuse of
the judicial system.Â  





[15]Peltier
argues that Dike failed to introduce evidence sufficient to support his claims
concerning discovery, or to establish the merit of the underlying claim.Â  This argument misapprehends the partiesÂ
relative burdens.Â  Peltier is correct
that a party relying on the discovery rule at trial must prove all elements of
the discovery to avoid the statute of limitations bar.Â  Because this case concerns the imposition of
sanctions, Peltier, as movant, bore the burden to prove entitlement to
sanctions.Â  See Tex. R. Civ. P.
13.





[16]Only
one of the petitions was filed in the Smith County Court at Law Number Three,
where the Dike case was filed.Â  The
remaining petitions were filed in the two remaining Smith County Courts at Law,
the District Courts of Smith County, and in Henderson County.Â  The trial court took judicial notice of each
of these filings, without objection.Â  Any
error in having done so was remedied when the filings were admitted into evidence
without objection.

Â 





[17]These
filings were in the Smith County District Courts, Smith County Court at Law Number
Two, and in Henderson County. Â This
exhibit was admitted into evidence without objection.





[18]The
trial court commented that:

Â 

What IÂm seeing here is, and I
think from all those other cases right there, is motion for summary judgment
and then the case gets non-suited.Â  ThereÂs
not a response filed.Â  And I think IÂve
had one or more of those here like that.Â 


Â 

The record does contain evidence of a pattern of
filing petitions, with a nonsuit after summary judgment.Â  The record merely reflects various petitions
and corresponding nonsuits.Â  Even the
lone petition and nonsuit filed in the Smith County Court at Law Number Three
contained in exhibit one does not include evidence of a motion for summary
judgment having been filed in that case.





[19]One
of the findings of the trial court in support of good cause for imposing
sanctions is the ÂPlaintiffÂs attorneysÂ and firmÂs wider campaign of filing
similar baseless suits against Defendant and other car dealerships across
Texas.Â Â We find no support for this
finding in the record.Â  The fact that the
Weinstein law firm has filed and nonsuited similar claims against Peltier
Chevrolet, Inc., and Peltier Nissan is no evidence that those lawsuits were
baseless.Â  There is no independent
evidence in the record to support the finding that any of these lawsuits were
baseless.Â  Further, the petitions and nonsuits
contained in exhibits one and two were filed only in Smith and Henderson Counties.Â  There is no evidence in the record of similar
lawsuits filed against other car dealerships across Texas.Â  We disregard this finding in its entirety. Â ÂIn
reviewing sanctions orders, the appellate courts are not bound by a trial courtÂs
findings of fact and conclusions of law; rather, appellate courts must
independently review the entire record to determine whether the trial court
abused its discretion.ÂÂ  Am. Flood Res., Inc. v. Jones, 192
S.W.3d 581, 583 (Tex. 2006) (per curiam).





[20]Peltier
contends that it was permissible for the trial court to draw inferences from
the filing of the nonsuit, together with the additional nonsuits filed by
DikeÂs attorneys.Â  Because we determine
the nonsuits filed in other cases are not relevant to the issue of bad faith,
we do not believe an inference of bad faith can be made solely from the filing
of the nonsuit in this case.





[21]See
FN 14 and related text, supra.

Â 





[22]Peltier
claims the other filings and nonsuits introduced at the hearing, together with
the nonsuit in this case, support an inference of bad faith.Â  For the reasons previously stated, we do not
find these circumstances to be evidence of bad faith or harassment.





[23]The
court may issue sanctions under Chapter 10 upon motion or upon its own
initiative.Â  Tex. Civ. Prac. & Rem. Code Ann. Â§ 10.002(b). Â The sanctions may include Âan order to pay to
the other party the amount of the reasonable expenses incurred by the other
party because of the filing of the pleading or motion, including reasonable
attorneyÂs fees.ÂÂ  Tex. Civ. Prac. & Rem. Code Ann. Â§
10.004(c)(3).

Â 





[24]While
DikeÂs brief addressed the merits of imposition of sanctions under Rule 13, it
does not address the merits of the imposition of sanctions under Chapter 10.