Diane S. MATTLY and David Vallance, Appellants,

v.

SPIEGEL, INC. and First Consumers National Bank, Appellees.

No. 14–98–00239–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 8, 2000.

Lori Massey Cliffe, Houston, for appellants.

Billy Marin Donely, Shari L. Heyen, Houston, for appellees.

Panel consists of Justices YATES, FOWLER and FROST.

## OPINION

WANDA McKEE FOWLER, Justice.

Diane S. Mattly and David Vallance appeal from a sanctions order awarding Spiegel, Inc. and First Consumers National Bank (FCNB) a judgment of $5,000.00, plus interest and taxable court costs. In five points of error, Mattly and Vallance

complain of the following: (1) the trial court lacked plenary jurisdiction to enter the sanctions award; (2) the sanctions order was not sufficiently specific; (3) Mattly and Vallance did not bring the claim in bad faith; and (4) Mattly's claim was not groundless. Spiegel and FCNB filed an appeal as well, complaining that the amount of sanctions awarded was so low that it was unjust and against the great weight and preponderance of the evidence. We find that the trial court abused its discretion (1) when it entered a sanctions order that was not sufficiently specific, and (2) when it found that Mattly and Vallance brought this claim in bad faith. Consequently, we reverse the judgment of the trial court and render judgment that appellees take nothing in their counterclaim for sanctions.

## FACTUAL AND PROCEDURAL HISTORY

Diane Mattly had experienced problems with credit card fraud in the past. In the few years before this lawsuit, imposters had obtained Mattly's name and social security number and obtained approximately eighteen credit cards in her name. Mattly contacted several credit reporting agencies about these problems, and they advised her to place a red flag on her credit report. This "flag" would alert credit agencies that no credit accounts should be opened in Mattly's name unless the credit application was confirmed by calling Mattly at her home telephone number.

Mattly alleged that, after she had put a red flag on her credit report, Spiegel and/or FCNB issued a credit card to an imposter without checking Mattly's credit report.[1] The individual charged over two thousand dollars in merchandise through Spiegel's catalogue. One of Spiegel's employees contacted Mattly about the charges. Mattly explained that she did not apply for the credit card and had

placed a red flag on her credit report to prevent unauthorized charges. Spiegel alleges that seven months before a representative contacted Mattly, she knew that Spiegel was listed in her credit report and failed to notify Spiegel of the problem.

Because of Mattly's refusal to pay the charges, Spiegel gave the account to a credit agency that began efforts to collect the debt from Mattly. Mattly ended up hiring both an investigator and an attorney to help her resolve the problem. Even after hiring the investigator and a lawyer, Spiegel and FCNB continued to contact Mattly regarding the debt. At some point, FCNB sent Mattly a document entitled "affidavit of forgery", requesting that she fill it out. Because of her previous problems with credit card fraud, she showed the form to her investigator and asked him if she should fill it out. He gave her several reasons why she should not complete the form. First, he noted that the form asked for confidential information such as her social security number. Next, he told her that the name of the company requesting the information—FCNB—was not listed with Dunn and Bradstreet. And, finally, he said that FCNB was not listed with directory assistance in the city listed on the return address, nor did the fire department or police department in the city recognize the name. The investigator told her that he was worried it was not a request from a legitimate company. Based on this information and advice, Mattly did not return the form. However, she did give FCNB some information; her investigator testified that he spoke with someone representing FCNB and provided that person with the names of the personnel with the various law enforcement agencies who were investigating the fraudulent use of Mattly's credit and name. However, not having received the affidavit of forgery form, FCNB and Spiegel continued to attempt to collect the account.

---

**1.** Spiegel asserted that it issued the credit card in response to a pre-approved application that it mailed directly to Mattly.

Mattly originally filed this suit against Spiegel and FCNB alleging that they negligently issued credit to an imposter who claimed to be Mattly. She also alleged that they violated the Fair Credit Reporting Act. The sole actual damages requested in the lawsuit were (1) the attorney's fees incurred by Mattly through her California lawyer (who helped her clear up the problem with Spiegel), and (2) the attorney's fees incurred through David Vallance, who represented Mattly in her suit against Spiegel. Spiegel and FCNB denied the charges, and counterclaimed for sanctions, alleging that the pleading was groundless and should be subject to sanctions under rule 13 of the Texas Rules of Civil Procedure. After the suit had been on file for almost one year, Spiegel moved for summary judgment on the merits of Mattly's negligence claim, but it was never heard because Mattly nonsuited her case. The counterclaim for damages was tried to the trial court which awarded Spiegel and FCNB only $5,000 (plus interest and taxable court costs) of the $70,000 they requested.

## DISCUSSION AND HOLDINGS

### Plenary Jurisdiction

■ In their first point of error, Mattly and Vallance argue that the trial court did not have jurisdiction to enter the sanctions award against them. They argue that a nonsuit is a final judgment disposing of all claims, and that the trial court's plenary power extended only thirty days after the nonsuit was signed. Because the trial court did not enter its written order awarding sanctions until forty-three days after it granted Mattly's nonsuit, Mattly and Vallance claim it acted outside its plenary power, rendering the sanctions order void. As we explain below, their argument is misplaced.

■ Mattly and Vallance are correct that, "the plaintiff's right to take a nonsuit is unqualified and absolute as long as the defendant has not made a claim for affirmative relief." *BHP Petroleum Co. Inc. v. Millard,* 800 S.W.2d 838, 840 (Tex.1990); *Georgiades v. Di Ferrante,* 871 S.W.2d 878, 880 (Tex.App.—Houston [14th Dist.] 1994, writ denied). However, when a defendant has filed a counterclaim seeking affirmative relief, a plaintiff cannot discontinue the suit and preclude the counterclaim from being heard. *See* TEX.R. CIV. P. 96. A claim for affirmative relief must state a cause of action independent of the plaintiff's claim, that entitles the defendant to relief even if the plaintiff abandons or fails to establish her cause of action. *See Georgiades,* 871 S.W.2d at 880; *Leon Springs Gas Co. v. Restaurant Equip. Leasing Co.,* 961 S.W.2d 574, 577 (Tex. App.—San Antonio 1997, no pet.). "A claim for frivolous lawsuit damages is a claim for affirmative relief." *Page v. Page,* 780 S.W.2d 1, 3 (Tex.App.—Fort Worth 1989, no writ). A request for rule 13 sanctions under the Texas Rules of Civil Procedure is also a request for affirmative relief. *See id.*

Here, Spiegel and FCNB filed counterclaims under rule 13, seeking damages for a groundless suit brought in bad faith or for purposes of harassment. Mattly's nonsuit did not affect these claims for affirmative relief; they were still properly before the court after the nonsuit. Therefore, the trial court acted within its jurisdictional power when it granted the order awarding sanctions, and Mattly's and Vallance's first point of error is overruled.

### Specificity of Sanctions Order

■ In their second point of error, Mattly and Vallance argue that the trial court's order does not comply with (1) that part of rule 13, which requires the court to state the particularities upon which sanctions were issued and (2) section 10.005 of the Civil Practice and Remedies Code, which requires the court to describe the conduct warranting sanctions. We find nothing in the order reflecting that the judge ruled on the basis of section 10.005; therefore, we will address only rule 13.

As to that rule, Mattly and Vallance argue that the trial court failed to specify facts showing that Mattly's case was groundless, and brought in bad faith or for purposes of harassment. We agree.

■ Whether to impose rule 13 sanctions is within the trial court's sound discretion. *See Monroe v. Grider*, 884 S.W.2d 811, 816 (Tex.App.—Dallas 1994, writ denied). We will not set aside a sanctions order under rule 13 unless an abuse of discretion is shown. *See Falk & Mayfield L.L.P. v. Molzan*, 974 S.W.2d 821, 824 (Tex.App.—Houston [14 th Dist.] 1998, pet. denied). Nonetheless,"rule 13 imposes a duty on the trial court to point out with particularity the acts or omissions on which sanctions are based." *Zarsky v. Zurich Management, Inc.*, 829 S.W.2d 398, 399 (Tex.App.—Houston [14 th Dist.] 1992, no writ). Requiring the trial court to state the particulars of the good cause for imposing sanctions is mandatory. *See GTE Communications Sys. Corp. v. Curry*, 819 S.W.2d 652, 654 (Tex.App.—San Antonio 1991, no writ). A mere statement in the order that good cause was shown is insufficient to sustain the sanctions order. *See id.*

As we explain below, this judgment ordering sanctions does not meet these mandatory requirements. The judgment recites only the ultimate conclusions the court is required to make in assessing sanctions, and does not state any facts to support it. The judgment states the following:

1. Plaintiff/Counter–Defendant and her attorney, Mr. David Vallance, filed this lawsuit in bad faith and for improper purposes, including harassment of Defendants/Counter–Plaintiffs.

2. At the time that Plaintiff/Counter–Defendant and her attorney, Mr. David Vallance, filed this lawsuit, they lacked any basis to believe that the contentions that were made against Defendants/Counter–Plaintiffs were warranted by existing law or by a nonfrivolious argument for the extension, modifica-

tion, or reversal of existing law or the establishment of new law.

The trial court also entered findings of fact and conclusions of law. The pertinent findings are set out below.

The only damages sought by Plaintiff/Counter–Defendant were attorney's fees. Plaintiff/Counter–Defendant suffered no actual damages as a result of Defendants/Counter–Plaintiffs alleged negligence.

Plaintiff/Counter–Defendant lacked any basis to believe that the contentions that were made against Defendants/Counter–Plaintiffs were warranted by existing law.

Plaintiff/Counter–Defendant lacked any basis to believe that the contentions that were made against Defendants/Counter–Plaintiffs were warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

Plaintiff/Counter–Defendant's pleadings were groundless and brought in bad faith.

Plaintiff/Counter–Defendant's pleadings were brought for the purpose of harassment.

Plaintiff/Counter–Defendant's pleadings were signed by her attorney, Mr. David Vallance.

Plaintiff/Counter–Defendant's attorney failed to conduct a reasonable investigation of the law and facts before initiating this lawsuit.

The acts that Plaintiff/Counter–Defendant complained of were consistent with the requirements of The Fair Credit Reporting Act.

The vast majority of these findings and conclusions are conclusory; they fail to state any particulars. *See Murphy v. Friendswood Development Co.*, 965 S.W.2d 708, 710 (Tex.App.—Houston [1 st Dist.] 1998, no pet.); *Schexnider v. Scott & White Memorial Hosp.*, 953 S.W.2d 439,

441 (Tex.App.—Austin 1997, no pet.). One purpose of the particularity requirement is to justify the imposition of sanctions and to show that the trial court properly weighed the sanctions request and imposed sanctions in an appropriate manner when justified by the circumstances. *See Murphy* 965 S.W.2d at 710.

Neither the sanctions order nor the findings of fact contain any facts justifying the imposition of sanctions. This failure by the court to comply with rule 13 is an abuse of discretion that renders the order unenforceable and warrants a reversal. *See Thomas v. Thomas*, 917 S.W.2d 425, 432 (Tex.App.—Waco 1996, no writ). Mattly's second point of error is sustained.[2]

## The Finding of Bad Faith

In her fifth point of error, Mattly contends that the trial court abused its discretion when it found that her claims were brought in bad faith. As explained below, we find no evidence in the record to support the trial court's finding that Mattly and her attorney brought the suit in bad faith.

■■■■ A party cannot obtain rule 13 sanctions unless the party proves that the claims are groundless and that the opposing party brought the claim in bad faith or to harass the party. *See* Tex.R. Civ. P.13. One purpose of rule 13 is to check abuses in the pleading process. *See McCain v. NME Hospitals, Inc.*, 856 S.W.2d 751, 757 (Tex.App.—Dallas 1993, no writ). As previously noted, rule 13 authorizes sanctions, available under rule 215(2)(b)[3], against an attorney, a represented party, or both, who files a pleading that is groundless and brought in bad faith or groundless and brought for the purpose of harassment.

The trial court must examine the circumstances existing when the litigant filed the pleadings to determine whether rule 13 sanctions are proper. *See Monroe*, 884 S.W.2d at 817. Bad faith does not exist when a party exercises bad judgment or negligence; "it is the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes." *Falk*, 974 S.W.2d at 828, *quoting Campos v. Ysleta Gen. Hosp., Inc.*, 879 S.W.2d 67, 71 (Tex.App.—El Paso 1994, writ denied). Courts must presume that papers are filed in good faith, and the party moving for sanctions bears the burden of overcoming this presumption. *See Tarrant County v. Chancey*, 942 S.W.2d 151, 154 (Tex.App.—Fort Worth 1997, no pet.). Spiegel and FCNB point to four actions which, they claim, show that Mattly acted in bad faith: (1) Mattly voluntarily nonsuited her claim after it was pending for a year; (2) Mattly and Vallance did not adequately research the merits of her claims; (3) Mattly failed to respond to FCNB's request to investigate her credit complaint; and (4) Spiegel and FCNB gave Mattly and Vallance notice that Mattly's claims had no legal merit. However, as we explain below, we find no evidence in the record that overcomes the presumption that Mattly and her attorney filed their pleadings in good faith.

■■■■ First, the record reflects that Mattly did not nonsuit her claims because of bad faith. She testified at the hearing on the motion for sanctions that she could no longer afford to continue her lawsuit. Up until the time of nonsuit, she had accumulated over fourteen thousand dollars in attorney's fees and was waiting for depositions to begin. Moreover, in her motion for nonsuit, she stated that the case had become too expensive for her to continue.

---

2. Although our disposition of this point alone requires that we reverse the case, it would be only a reversal and remand of the case to the trial court. The appellate rules require us to reverse the court's judgment and render the judgment the trial court should have rendered, unless we must remand for further proceedings or must remand in the interests of justice. *See* Tex.R.App. P. 43.3. Because the fifth point of error presents an issue that requires us to reverse and render, we address it, as well.

3. Texas Rule of Civil Procedure 215 governs sanctions for discovery abuse.

She specifically stated that she was maintaining the merit of her claims and that she was choosing to pursue a different avenue, one that would procure legislative changes to make credit card fraud more difficult. The record contains no evidence to show that Mattly acted in bad faith by filing a nonsuit, and we are unwilling to find that the filing of a nonsuit is, in and of itself, evidence of bad faith.[4] See e.g. *Delgado v. Methodist Hosp.*, 936 S.W.2d 479, 487 (Tex.App.—Houston [14 th Dist.] 1996, no writ); *Miller v. Armogida*, 877 S.W.2d 361, 365 (Tex.App.—Houston [1 st Dist.] 1994, writ denied)(where plaintiff, who sued *guardian ad litem* for not prosecuting a case, non-suited after sanctions were filed and then re-filed in county court).

 We also do not find evidence that Mattly and her attorney failed to conduct a reasonable pre-filing inquiry into the merits of her claim. "Reasonable inquiry means the amount of examination that is reasonable under the circumstances of the case." *Monroe*, 884 S.W.2d at 817. Mattly spoke with three attorneys to find out what she could do to recover her expenses incurred in stopping Spiegel and the Bank's collection efforts. In addition, her California attorney suggested she contact a Texas attorney about recovering her fees because Spiegel and the Bank had Texas contacts. In addition, before she hired Vallance, a second attorney, her niece who lives in Texas, advised her that her lawsuit had merit. We find no evidence that Mattly, a lay person, failed to make a reasonable pre-filing inquiry, especially when every lawyer with whom she spoke advised her that she had a legitimate claim.

We reach the same conclusion as to Vallance, who testified that he spent at least twelve hours of research into the merits of Mattly's claim. He spent at least a third of his time researching which statutes were applicable to Mattly's negligence claim. He acknowledged that attorney's fees usually are recoverable only if authorized by contract or statute. However, during his research he located a Texas case recognizing that equity allows recovery of attorney's fees and other litigation expenses "where a party was required to prosecute or defend the previous suit as a consequence of the 'wrongful act' of the defendant." *Baja Energy, Inc. v. Ball,* 669 S.W.2d 836, 838–39 (Tex.App.—Eastland 1984, no writ); *see also Estate of Arlitt v. Paterson,* 995 S.W.2d 713, 721 (Tex.App.—San Antonio 1999, pet. denied) (holding that although attorney's fees are usually not recoverable unless permitted by statute or contract, contractual or statutory authorization was not necessary in a malpractice claim to recover attorney's fees and costs as damages). This led him to believe that Mattly's case was a unique situation, one presenting the exception discussed in *Baja Energy.* There was no other evidence on the issue of reasonable inquiry as to Vallance. Thus, the only evidence in the record on the issue of reasonable inquiry shows that both Mattly and Vallance made a reasonable inquiry before filing suit.

 Next, we find no evidence that Mattly's failure to respond to the FCNB's inquiry into her claim of fraud was the result of bad faith. The FCNB contacted Mattly and asked her to fill out a form entitled "affidavit of forgery" and also requested other information so that it could investigate her claim that the Spiegel credit card was issued fraudulently. Mattly admits she did not fill out these forms, but says she did not fill them out because her investigator advised her not to complete them. The investigator, in turn, testified that, because Mattly had been a victim of credit card fraud in the past, he wanted to insure that the company requesting the data was legitimate. When he could not locate the company with either Dunn and Bradstreet, the local telephone directory of

---

4. However, in a patently meritless suit, some courts have held that failing to nonsuit may constitute some evidence supporting sanctions. *See Delgado,* 936 S.W.2d at 487.

the city listed on its return address, or with the police and fire departments in the city, he advised her not to fill out the form. However, he pointed out that, at some point, he gave FCNB the names of several law enforcement personnel in Houston who were investigating the fraudulent use of Mattly's name and credit. This notification, both from Mattly and from her investigator, was sufficient under the regulations to notify the card issuer—FCNB—of unauthorized use of the card. *See* 12 C.F.R. § 226.12(b)(3). This evidence does not reflect a bad faith motive in refusing to comply with the FCNB's request.[5]

■ Lastly, we find no evidence that Mattly and Vallance acted in bad faith in refusing to dismiss her case when Spiegel and the FCNB told Vallance that, in their opinion, they thought Mattly's claims were not viable. In this case, we decline to hold that this fact alone establishes bad faith. The disagreement here concerned the interpretation and application of case law and the Fair Credit Reporting Act. In virtually every case that comes before a judge, the parties disagree on these matters. Our conclusion might be different if Spiegel/FCNB had pointed out an easily verifiable fatal flaw, *see Miller v. Armogida*, 877 S.W.2d 361, 365 (Tex.App.—Houston [1 st Dist.] 1994, writ denied) (where plaintiff, sued minor's *guardian* ad litem, not his attorney ad litem, for failure to prosecute a claim), or the case clearly had no merit and no argument for an extension of existing law, *see e.g. Delgado*, 936 S.W.2d at 487–88 (where plaintiff who had arranged for a private room but received

only a semi-private room, sued for negligence, intentional infliction of emotional distress, breach of contract by hospital, and tortious interference with a contract, all of which she alleged caused her mental anguish). But, as we discuss below, these situations are not present here.

Spiegel and FCNB alleged that Mattly's lawsuit was patently meritless because (1) Mattly had no actual damages—only attorneys fees—and (2) they owed no duty to Mattly to check her credit report before issuing a pre-approved card. At trial, the parties and the judge did not focus on duty, they focused on actual damages. Defendants claimed, and the trial judge clearly believed, that Mattly could not, based on the extension or modification of existing law or the establishment of new law, recover attorney's fees as damages in a negligence action.

Mattly's petition prayed for Mattly to recover the attorney's fees she incurred (1) in clearing up her credit problems with Spiegel, whom she alleged wrongfully issued the credit card, and (2) in prosecuting the case against Spiegel. However, by the time of the sanctions hearing, Vallance argued only that the expenses (attorney's fees) incurred in resolving the problems created by Spiegel's wrongful act should be recoverable. He relied on a Texas court of appeals opinion that has not been overturned, and has, in fact, been cited by several other courts of appeals. *See Baja Energy, Inc.*, 669 S.W.2d at 838–39. *Baja Energy* noted that, in certain situations, equity allows the recovery of attorney's fees and other litigation expenses "where a

5. Spiegel/FCNB argue that the Official Staff Commentary to the regulations permits a card issuer to request information in written form from a cardholder. *See* 12 C.F.R. § 226.12(b)–2,3 (1995). To begin with, we do not find any language in the Commentary remotely resembling Spiegel/FCNB's contention, much less *requiring* a cardholder to return a form sent to it by the card issuer. But, beyond this fundamental problem with the argument, the issue here is not whether the card issuer *could* obtain written information from Mattly. The issue is whether Mattly,

someone who had been the victim of credit card abuse on numerous occasions, acted in bad faith when she refused to return a form (which requested confidential information) to a company her investigator could not locate through normal investigative channels. Citing to the same commentary, Spiegel/FCNB also argue that if the cardholder fails to comply with these requests from a card issuer, the card issuer can terminate its investigation and "seek payment from the cardholder." Our reading of the Commentary does not reveal any explicit support for this statement.

party was required to prosecute or defend the previous suit as a consequence of the 'wrongful act' of the defendant." *Id.* at 839.

In opposition to this theory, Spiegel's counsel argued that the *Baja* case did not apply because in that case, the fees were recoverable because they were based in contract. However, as mentioned above, three subsequent courts of appeal have noted the same exception to the general rule that attorney's fees are not recoverable unless authorized by contract or statutes. *See Estate of Arlitt,* 995 S.W.2d at 721 (holding that, although attorney's fees usually are not recoverable unless permitted by statute or contract, statutory or contractual authorization was not necessary in a malpractice claim to recover attorney's fees and costs as damages); *Standard Fire Ins. Co. v. Stephenson,* 963 S.W.2d 81, 90–91 (Tex.App.—Beaumont 1997, no pet.) (holding that, in a bad faith claim, an insured could recover attorney's fees incurred as a result of the insurer's bad faith where those fees were incurred in prior litigation between the insurer and the insured); and*Nationwide Mutual Ins. Co. v. Holmes,* 842 S.W.2d 335, 340–42 (Tex.App.—San Antonio 1992, writ denied)(holding that insured, who incurred unnecessary attorney's fees in order to induce insurer to indemnify him, may recover those fees in a later suit "in the name of equitable principles"). And, even though no statute or contract authorized recovery of attorney's fees to the plaintiff, all three opinions—which have not been overturned—allowed the recovery of attorney's fees. *See Arlitt,* 995 S.W.2d at 721; *Standard Fire Ins. Co.,* 963 S.W.2d at 90; *Nationwide Mutual Ins. Co.,* 842 S.W.2d at 341–42.

Spiegel and FCNB also rely on the Fair Credit Reporting Act to argue that they owed no duty to Mattly to check her credit report before issuing a pre-approved credit card and, in fact, were precluded from viewing Mattly's credit report. However,

Spiegel and FCNB have been unable to demonstrate with any clarity that Mattly's claim was precluded by the Fair Credit Reporting Act.[6] The sections they cite do not directly or indirectly reveal that Mattly had no cause of action; in fact, if anything, they show the opposite. *See* 15 U.S.C.A. § 1681b(a)(3)(A) (a consumer reporting agency may furnish a consumer report " ... to a person which it has reason to believe intends to use the information in connection with: a credit transaction involving the consumer, a transaction involving the extension of credit to a consumer, reviewing an account of the consumer, or collection of an account of the consumer"); 15 U.S.C.A. § 1681b(c)(1)(B)(i) (a consumer reporting agency may furnish a consumer report relating to any consumer in a transaction not initiated by the consumer only if the transaction consists of a firm offer of credit); 15 U.S.C.A. § 1681b(e) (concerning a consumer's right to be excluded from lists provided by credit reporting agencies); 15 U.S.C.A. § 1681m(d) (requiring persons who use a consumer report on a consumer in connection with a credit transaction not initiated by the customer, to provide the customer with a clear and conspicuous statement that information was used in connection with the transaction, that the consumer received the credit because the consumer satisfied the criteria for credit worthiness ... ); and 15 U.S.C.A. § 1681t (outlining statute's relation to state laws).

Even if we look beyond what Spiegel and FCNB have cited to us, we find nothing to indicate that Mattly's suit was sanctionable. First, the purpose of the Act is to protect consumers, a point Congress made very clear:

> It is the purpose of this Subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit ... and other information in a manner which is fair and equitable

---

**6.** Spiegel and FCNB did not raise preemption.

to the consumer, with regard to the confidentiality, accuracy, relevancy and proper utilization of such information. . . .

15 U.S.C.A. § 1681(b).

Second, there is no Texas case law holding that a card issuer does, or does not have, a duty to review the cardholder's credit history prior to issuing a credit card. However, other state courts and federal courts have litigated issues between card issuers and victims of identity theft or between card issuers and card holders. *See Andrews v. Trans Union Corp.*, 7 F.Supp.2d 1056 (C.D.Ca.1998) (involving a suit between a victim of identity theft and credit reporting agencies); *In re Akins*, 235 B.R. 866 (W.D.Tex.1999) (containing an interesting and lively discussion of the credit card industry and the inaccuracies in reporting); *Guzman v. Toyota Motor Credit Corp.*, 745 So.2d 1123–24 (Fla.Dist.Ct.App.1999) (involving a suit between a card issuer and a victim of identity theft). These cases confirm that this is a relatively new area of the law because identity theft is a relatively new crime. *See* Higgins, *Identity Thieves*, 84—Oct. A.B.A. J. 42. These cases do not resolve the main issue in contention in this case. However, they do contain some discussions that would lead one to believe that Mattly could sue, and could argue that suit should be allowed as an extension of existing law or as the establishment of new law.

In short, after rather extensive research, much more extensive than either of the parties appear to have done, we cannot say that the Fair Credit Reporting Act precluded the type of claim Mattly brought. Thus, bringing such a claim would not support the imposition of sanctions.

 There are two other comments we feel compelled to make, specifically with regard to Spiegel and FCNB's claim that

Mattly acted in bad faith by refusing to dismiss her case when told that she had no cause of action and, more generally with regard to Spiegel and FCNB's claim that the claim was frivolous. First, by arguing that the case had no merit, Spiegel and FCNB relied on an extremely complex federal statutory scheme. It is one thing to sanction a party for bringing a nonexistent common law claim. Often, one can easily determine if a cause of action exists. *See e.g. Delgado*, 936 S.W.2d at 487. The case law supports the imposition of sanctions in such a case. *See id.; Miller*, 877 S.W.2d at 365. It is a totally different matter to sanction a party on the basis of a complex statute, especially one which does not directly address the matters in issue. We have found no case law imposing sanctions in such an instance, and have been cited to none. This is not to say that, when a complex statute is involved, sanctions can never be imposed. We are merely saying that judges should consider the complexity of the claim and underlying statute.

Second, Spiegel and FCNB's own actions in this case provide some indication that the alleged lack of merit was not as readily apparent as they suggest. We find it noteworthy that, while steadfastly maintaining the frivolousness of Mattly's suit, Appellees incurred nearly $70,000 in attorney's fees. And, this was in a case with minimal discovery and no apparent "Rambo tactics". Again, this is not to say that parties may not incur large legal fees if they are going to allege that a suit is frivolous,[7] but, in this case, this fact weighs against the imposition of sanctions.

Rule 13 "is a tool that must be available to trial courts in those egregious situations where the worst of the bar uses our honored system for ill motive without regard to reason and the guiding principles of the law. The rule, however, cannot become a weapon used to punish those

---

7. Mattly took no action to cause Spiegel and FCNB's legal fees to reach nearly $70,000, unlike some frivolous actions in which a party will file numerous motions and discovery requests that inflate the fees.

with whose intellect or philosophic viewpoint the trial court finds fault." *Tarrant County v. Chancey,* 942 S.W.2d 151, 154 (Tex.App.—Fort Worth 1997, no pet.). We find no evidence that Mattly and her attorney consciously continued the lawsuit for dishonest, discriminatory, or malicious purposes, and we sustain Mattly's fifth point of error.

## CONCLUSION

In summary, the judgment and findings of fact are conclusory and therefore will not support the imposition of sanctions. Moreover, no evidence supports the trial court's finding that Mattly or her attorney acted in bad faith. Therefore, the trial court abused its discretion in imposing sanctions. Because we have held that sanctions were not properly imposed, we need not reach Spiegel's and FCNB's cross-appeal that the sanctions award was too low, nor do we reach Mattly and Vallance's points of error alleging that the suit was not groundless.

The judgment of the trial court is reversed, and we render judgment that appellees, Spiegel, Inc. and First Consumers National FCNB, take nothing in their counterclaim for sanctions.