Opinion issued July 20, 2006



 









In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01214-CV




SHARON KAY KEITH, Appellant

V.

RANDALL DEAN KEITH, Appellee




On Appeal from the 312th District Court
Harris County, Texas
Trial Court Cause No. 2000-24422




DISSENTING OPINION
            I respectfully dissent. This case involves a non-frivolous Suit Affecting the
Parent Child Relationship (SAPCR) that needed to be tried or mediated. It was not,
and one of the litigants was hit with huge sanctions. I believe the trial court clearly
abused its discretion in awarding sanctions against Sharon and that the opinion of this
Court affirming the trial court’s judgment will have a chilling effect on the
willingness of parents concerned for the safety of their children to approach the
family courts. I would hold that (1) the sanctions order, even when read together with
the trial court’s findings of fact and conclusions of law, fails to state the grounds for
sanctions with particularity, as required for Rule 13 sanctions, and that (2) even if the
judgment survived that hurdle, Randall failed to carry his burden of proving that
Sharon’s suit was either groundless and brought in bad faith or groundless and
harassing. I would reverse and render judgment for appellant.
Standard of Review
          The purpose of Rule 13 sanctions is to prevent pleading abuse. Monroe v.
Grider, 884 S.W2d 811, 817 (Tex. App.—Dallas 1994, pet. denied); see also Home
Owners Funding Corp. of America, 815 S.W.2d 884, 888 (Tex. App.—Corpus Christi
1991, no pet.). Rule 13 provides for sanctions if a party files a pleading that is either
(1) groundless and brought in bad faith or (2) groundless and brought to harass. Tex.
R. Civ. P. 13; see also Randolph v. Walker, L.L.P., 29 S.W.3d 271, 277 (Tex.
App.—Houston [14th Dist.] 2000, pet. denied). A suit is groundless for purposes of
Rule 13 if it has “no basis in law or fact and [is] not warranted by good faith argument
for the extension, modification, or reversal of existing law.” Elkins v. Stotts-Brown,
103 S.W.3d 664, 668 (Tex. App.—Dallas 2003, no pet.) (quoting Tex. R. Civ. P. 13).
“Bad faith is not simply bad judgment or negligence, but means the conscious doing
of a wrong for dishonest, discriminatory, or malicious purpose.” Id. at 669; Mattly
v. Spiegel, Inc., 19 S.W.3d 890, 896 (Tex. App.—Houston [14th Dist.] 2000, no pet.)
(quoting Falk & Mayfield L.L.P. v. Molzan, 974 S.W.2d 821, 828 (Tex.
App.—Houston [14th Dist.] 1998, pet. denied)). “Harassment” is used “to describe
words, gestures, and actions that tend to annoy, alarm, and verbally abuse another
person.” Elkins, 103 S.W.3d at 669. If a pleading is filed in violation of Rule 13,
“the court, upon motion or upon its own initiative, after notice and hearing, shall
impose an appropriate sanction available under Rule [of Civil Procedure] 215.2(b),
upon the person who signed it, a represented party, or both.” Tex. R. Civ. P. 13.


 No
sanctions may be imposed under Rule 13 “except for good cause, the particulars of
which must be stated in the sanctions order.” Id. 
          To establish a right to sanctions under Texas Rule of Civil Procedure 13, a
party must first overcome the presumption that the pleadings are filed in good faith;
that is, he must prove that the filing is “the conscious doing of a wrong for dishonest,
discriminatory, or malicious purposes.” See Elkins, 103 S.W.3d at 668–69; Mattly,
19 S.W.3d at 896; Monroe, 884 S.W.2d at 819. He must then plead and prove that
the contentions in the pleading are groundless, i.e., without any “basis in law or fact
and not warranted by good faith argument for the extension, modification, or reversal
of existing law.” Tex. R. Civ. P. 13. 
          To determine whether rule 13 sanctions are proper, the trial court must examine
the circumstances existing at the time the party filed the pleading. Elkins, 103
S.W.3d at 668; Monroe, 884 S.W.2d at 817. Thus “it [is] imperative for the trial
court to convene and conduct an evidentiary hearing.’” Randolph, 29 S.W.3d at 277
(quoting Karagounis v. Property Co. of America, 970 S.W.2d 761, 765 (Tex.
App.—Amarillo 1998, pet. denied)). To sanction a party for filing a groundless
pleading, the trial court has to find, based on facts in the record, that the party was on
notice that the facts upon which the pleading was based were incorrect and that he,
nevertheless, filed the pleading without making a reasonable inquiry into the facts. 
See Bradt, 14 S.W.3d at 763; Monroe, 884 S.W.2d at 819. “Reasonable inquiry
means the amount of examination that is reasonable under the circumstances of the
case.” Mattly, 19 S.W.3d at 897 (quoting Monroe, 884 S.W.2d at 817).
          No rule 13 sanctions may be imposed “except for good cause, the particulars
of which must be stated in the sanctions order.” Tex. R. Civ. P. 13; Alpert, 178
S.W.3d at 411; Gorman v. Gorman, 966 S.W.2d 858, 867 (Tex. App.—Houston [1st
Dist.] 1998, pet. denied); Woodward v. Jaster, 933 S.W.2d 777, 782 (Tex.
App.—Austin 1996, no pet.); Kahn v. Garcia, 816 S.W.2d 131, 133 (Tex.
App.—Houston [1st Dist.] 1991, no writ) (“Rule 13 imposes a duty on the trial court
to point out with particularity the acts or omissions on which sanctions are based.”). 
However, “a trial court’s failure to make particular findings in a rule 13 order may
constitute harmless error when the trial court’s findings of fact and conclusions of law
supply the particulars of good cause required by rule 13.” Gorman, 966 S.W.2d at
867. The purpose of the particularity requirement is three-fold: it “(1) ensures that
the trial court is held accountable and adheres to the standard of the rule; (2) requires
the trial court to reflect carefully on its order before imposing sanctions; (3) informs
the offending party of the particular conduct warranting sanction, for the purpose of
deterring similar conduct in the future; and (4) enables the appellate court to review
the order in light of the particular findings made by the trial court.” Alpert v. Crain,
Caton & James, P.C., 178 S.W.3d 398, 411 (Tex. App.—Houston [1st Dist.] 2005,
pet. denied).
          In reviewing an award of sanctions under Rule 13, we examine the entire
record and will overturn a trial court’s discretionary ruling if it was based on an
erroneous view of the law or a clearly erroneous assessment of the evidence. See
Alpert, 178 S.W.3d at 410; Randolph, 29 S.W.3d at 276; Monroe, 884 S.W2d at 816.
We are limited to determining whether the trial court’s action was arbitrary or
unreasonable in light of all the circumstances in the particular case. Downer v.
Aquamarine Operators Inc., 701 S.W.2d 238, 241–42 (Tex. 1985); Randolph, 29
S.W.3d at 276. We must determine whether the trial court acted without reference
to any guiding rules and principles. Downer, 701 S.W.2d at 241–42; Bradt v. Sebek,
14 S.W.3d 756, 760 (Tex. App.—Houston [1st Dist.] 2000, pet. denied), cert. denied
sub nom Bradt v. Lilly, 532 U.S. 905, 121 S. Ct. 1229 (2001). 
          The appropriateness of Rule 13 sanctions is determined under the same test
used to determine whether sanctions for discovery abuse are just under Rule 215.2(b). 
See Tex. R. Civ. P. 215.2(b) (“[T]he court in which the action is pending may, after
notice and hearing, make such orders in regard to the failure as are just.”) (emphasis
added); Metzger v. Sebek, 892 S.W.2d 20, 53 (Tex. App.—Houston [1st Dist.] 1994,
writ denied). To be just, the sanction must be directed against the abuse and towards
remedying the prejudice caused the innocent party. Cire v. Cummings, 134 S.W.3d
835, 839 (Tex. 2004); Bradt, 14 S.W.3d at 760. “[The] trial court may not impose a
sanction that is more severe than necessary to satisfy its legitimate purpose.” Cire,
124 S.W.3d at 839. In determining whether to impose sanctions, the trial court is
obliged to determine whether the offensive conduct was referable to the attorney who
filed the pleading, the party, or both. Falk, 974 S.W.2d at 825. A party should not
be sanctioned for the conduct of its counsel “unless the party is implicated apart from
having entrusted its legal representation to counsel.” Bradt, 14 S.W.3d at 769;
Metzger, 892 S.W.2d at 52. “[T]he party must be implicated for his unique conduct
separate from the attorney’s representation, while the attorney may be generally liable
for each groundless pleading.” Bradt, 14 S.W.3d at 769. Thus, “we must (1)
determine whether a direct relationship exists between the offending conduct and the
sanctions imposed, and (2) whether the sanctions are excessive.” Metzger, 892
S.W.2d at 53.
          A.      Lack of Statement of Particulars to Support Sanctions
          Under the express language of Rule 13, no sanctions may be imposed “except
for good cause, the particulars of which must be stated in the sanction order.” Tex.
R. Civ. P. 13; see Alpert, 178 S.W.3d at 411; Gorman, 966 S.W.2d at 867. Since the
purpose of the trial court’s findings in this case was to satisfy the particularity
requirement of a Rule 13 sanctions order, we, as a reviewing court, must examine the
findings to see whether they contain facts justifying the imposition of sanctions. See
Mattly, 19 S.W.3d at 896; Gaspard v. Beadle, 36 S.W.3d 229, 240 (Tex.
App.—Houston [1st Dist.] 2001, pet. denied). 
          The trial court’s sanctions order and judgment recited only, “This Court finds
that the Emergency Petition to Modify Parent-Child Relationship . . . was groundless
and brought in bad faith, as is defined and contemplated by Rule 13 of the Texas
Rules of Civil Procedure.” The trial court’s findings of fact in support of its
conclusion that Sharon’s petition to modify was groundless and brought in bad faith
state: 
(1a)   “the allegations made by Sharon Kay Keith in her affidavit
attached to the emergency motion were so disparate from the
testimony received in open court, including that from the affiant
herself, and in interviews with the children to cause the Court to
conclude that the affidavit was meant to deceive and mislead the
Court”; 
 
(1b)   “[t]he emergency hearing given as a result of affiant’s misleading
affidavit was requested at a time that caused enormous
inconvenience and expense to Randall Dean Keith”; and 
 
(1c)   “the motion to modify supported by Sharon Kay Keith’s affidavit
was subsequently non-suited by Sharon Kay Keith.” 

The court’s conclusions of law provide, in relevant part: 
(1)     “Sharon Kay Keith’s Emergency Petition to Modify Parent–Child
Relationship was filed in violation of Rule 13 of the Texas Rules
of Civil Procedure, based on findings recited in 1, 1(a), 1(b) and
1(c),” and (2) “[a]ll claims brought by Sharon Kay Keith in her
Emergency Petition to Modify Parent–Child Relationship were
non-suited.” 

          The trial court’s first finding, that “the allegations made by Sharon Kay Keith
in her affidavit attached to the emergency motion were so disparate from the
testimony received in open court, including that from the affiant herself, and in
interviews with the children to cause the Court to conclude that the affidavit was
meant to deceive and mislead the Court,” is entirely conclusory. The finding does not
identify a single disparity between the pleadings and the testimony. It cannot even
be determined by reading this finding whether the finding of an unidentified
“disparity” between Sharon’s affidavit and the evidence at the sanctions hearing is
meant to support the conclusion that Sharon’s pleadings in her SAPCR were
groundless or whether the finding is meant to support the conclusion that Sharon’s
pleadings were filed in bad faith, i.e., to deceive and thus with a malicious intent. 
This conclusory finding does nothing, therefore, to satisfy the particularity
requirement of Rule 13. Nor is there any other statement of fact in the trial court’s
sanctions order and judgment or its findings from which the trial court could have
determined that Sharon’s SAPCR was groundless, i.e., without a basis in fact or law,
or that it was filed in bad faith, i.e., intended to deceive the court as to the merits of
the suit. 
          The trial court’s second finding, that “[t]he emergency hearing given as a result
of affiant’s misleading affidavit was requested at a time that caused enormous
inconvenience and expense to Randall Dean Keith,” is similarly conclusory and does
nothing to support the trial court’s holding that Sharon’s suit was groundless and filed
in bad faith. At most, if supported by the evidence at the sanctions hearing, this
finding could support a holding that Sharon filed her SAPCR as an emergency motion
for the purpose of harassment—a holding the trial court did not recite in the sanctions
order and judgment as a ground for its sanctions award, although such a holding was
sought by Randall. Thus, at most, the trial court’s statement of particulars could
satisfy only that element of a sanctions award that the court did not hold—that
Sharon’s SAPCR was filed with the intent of harassing Randall. 
          Nor does the trial court’s third and final finding of fact—that Sharon non-suited her claims—support a finding of bad faith. Sharon testified at the sanctions
hearing that she non-suited her Emergency Petition to Modify because the emergency
created by Randall’s taking the children on a cruise had passed and because Randall
had filed a Motion for Alternate Dispute Resolution with the court. She further
testified that she had requested that the same issues be mediated. Sharon’s non-suit
was thus evidence of her good faith intention to pursue her claims in mediation in
reliance on Randall’s professed willingness to mediate, not evidence of bad faith. See
Mattly, 19 S.W.3d at 896–97 (when claims were non-suited to pursue a different
avenue, record contained no evidence that non-suit was filed in bad faith).
          Because the trial court’s statement of particulars fails to state with specificity
any facts that could supply the essential element of good cause to levy sanctions
against Sharon, it fails to meet the criteria for a statement of particulars in support of
a sanctions order required by rule 13. Consequently, it does not “ensure that the trial
court is held accountable and adheres to the standard of the rule.” Alpert, 178 S.W.3d
at 411. It does not show that the trial court “reflect[ed] carefully on its order before
imposing sanctions.” Id. It does not “inform[] the offending party of the particular
conduct warranting sanction, for the purpose of deterring similar conduct in the
future.” Id. And it does not “enable the appellate court to review the order in light
of the particular findings made by the trial court.” Id. Rather, to determine whether
the trial court based its order on any evidence in the record at all, it is necessary for
this court to review the record de novo without any guidance from the lower court. 
I would hold, therefore, that the trial court abused its discretion by entering a
sanctions order that does not satisfy the particularity element of Rule 13. See Mattly,
19 S.W.3d at 896 (“Neither the sanctions order nor the findings of fact contain any
facts justifying the imposition of sanctions. This failure by the court to comply with
rule 13 is an abuse of discretion that renders the order unenforceable and warrants a
reversal.”). 
          I would sustain Sharon’s point of error and would reverse and render judgment
in her favor. 
 
          B.      Lack of Evidentiary Support for Sanctions
 
          Even more disturbing than the trial court’s failure to state the particulars
underlying its sanctions award is the complete absence of evidentiary support for the
trial court’s conclusory findings. There is no evidence in the record of any material
disparity between Sharon’s affidavit in support of her SAPCR and the testimony by
any witness at either the show cause hearing or the sanctions hearing. There is no
evidence in the record that Sharon was on notice that the facts upon which her
SAPCR was based were incorrect and that she, nevertheless, filed the pleading
without making a reasonable inquiry into those facts. See Bradt, 14 S.W.3d at 763;
Monroe 884 S.W2d at 819. Rather, the testimony at both the show cause hearing on
her TRO and at the sanctions hearing establishes that Sharon did investigate her
claims about the children’s treatment while in Randall’s possession to the extent she
was reasonably able and they were not groundless. Nor is there any evidence that
Sharon filed her SAPCR with the malicious intent to deceive the court. Nor is there
any evidence that she knowingly filed her petition three days before Randall was to
take the children out of the country and set her motion for hearing on the day he was
to leave in order to harass him. Rather, the evidence directly refutes the imputation
to her of any deceitful or harassing purpose in either the filing or the timing of her
emergency SAPCR. Nor is there any evidence to support the necessary legal
conclusion that the sanctions were properly related to Sharon’s behavior or were
properly apportioned to deter her from abusing the pleading process. Rather, the
message sent by this case is the opposite of that intended by Rule 13. The message
sent is that severe sanctions may be levied for the mere filing of an emergency motion
to modify a conservatorship order, even when none of the legal requirements for the
imposition of sanctions set out in Rule 13 is satisfied.
Groundlessness of Sharon’s Pleadings
          A court may modify an order that provides for the terms and conditions of
conservatorship or of the possession of a child—as Sharon sought here—“if
modification would be in the best interest of the child and . . . the circumstances of
the child, a conservator, or other party affected by the order have materially and
substantially changed since . . . the date of the rendition of the order.” Tex. Fam.
Code Ann. § 156.101(1) (Vernon Supp. 2005). Sharon was thus required to plead
and to prove (1) that circumstances had materially changed since the divorce was
entered and Randall began exercising his periods of possession and (2) that
modification would be in the best interest of the children. See id. 
          Whether there has been a material and substantial change of conditions
affecting the child is normally determined by examining the evidence of changed
circumstances occurring between the date of the order or judgment sought to be
modified and the date of the filing of the motion to modify.


 Bukovich v. Bukovich,
399 S.W.2d 528, 529 (Tex. 1966); Gibbs v. Greenwood, 651 S.W.2d 377, 378–79
(Tex. App.—Austin 1983, no writ). Factors that the court may consider in
determining a child’s best interest include (1) the desires of the child; (2) the present
and future emotional and physical needs of the child; (3) the present and future
emotional and physical danger to the child; (4) the parental abilities of the individuals
seeking possession; (5) the programs available to assist these persons in promoting
the best interest of the child; (6) the plans for the child by these persons; (7) the
stability of the home; (8) the acts or omissions of the parent indicating that the
existing parent-child relationship is not a proper one; and (9) any excuse for the acts
or omissions of the parent. Holley v. Adams, 544 S.W.2d 367, 372 (Tex. 1976); Long
v. Long, 144 S.W.3d 64, 69–71 (Tex. App.—El Paso 2004, no pet.) (applying Holley
factors in suit for modification).
          Sharon’s pleadings and affidavit recited facts in support of her claims that
circumstances had materially and substantially changed for the worse since Randall’s
periods of possession had begun in December 2002 and that the children’s emotional
and physical safety was threatened by continuing the possession order without
modification. Sharon testified in her affidavit in great detail to “several incidents
[that] have happened which has [sic] caused me grave concern for the safety, mental
and physical health of my children.” The affidavit stated that the children had
returned from periods of possession with their father telling her that Andrew, an
autistic eight-year-old, had been “sent to his room and isolated for telling his father
and step-mother ‘no,’” which Sharon considered inappropriate for a child with his
diagnosis. Andrew had returned from these visits “in a ‘video-replay’ mode” and
with his self-talk “greatly heightened,” and Randall had “brushed aside” her concerns
about Andrew. 
          The affidavit further stated that the children had returned from their periods of
possession with Randall complaining to her that they had been denied food, sent to
their rooms, and not allowed to eat because they did not like what their step-mother
cooked, that they had not been allowed to help themselves to anything but water, that
they had begged not to be made to go back to their father’s house, and that they had
complained that they were “yelled at frequently” by their step-mother, were very
frightened of her, and feared the repercussions if they stepped out of line at their
father’s house. The children had attempted to contact Sharon while in their father’s
possession and either were not allowed to do so or were monitored, and their father
and step-mother had threatened to monitor them by hidden cameras. Sharon also
testified that Randall’s lack of attention to the children’s personal care and well-being
had “greatly affected” the children: they had returned from periods of possession with
“horrible sun-burns and unexplained bruises”; their nails had been cut so short that
they hurt; Emma’s hair, which had never been cut, had been cut without Sharon’s
knowledge or consent; and the like.
          Finally, the affidavit stated that the children had informed her that their father
and step-mother were taking them to the Caribbean, but that Randall had not told her
about the plans. She was “very concerned that their collective lack of diligence in the
care and control of the children that they will be harmed” and “alarmed that Andrew
would be subject to even harsher punishment from his father and his current spouse
as this is not an experience that Andrew has ever been in and no preparations were
made to acclimate to this trip.”
          To determine that Sharon’s SAPCR was filed without any basis in law or fact,
the trial court had to determine on the basis of evidence in the record that the facts
alleged in Sharon’s pleadings and affidavit represented no change since the divorce
decree and/or that those facts were incorrect and that Sharon had alleged them
without a reasonable investigation. See Bradt, 14 S.W.3d; Monroe, 884 S.W.2d at
819. Thus, Randall had the burden of proving that the facts alleged to underlie
Sharon’s allegation that children’s treatment in his care since the divorce did not
threaten their emotional and physical needs were incorrect and made without
investigation. He had to prove that he was not violating court orders by refusing to
attend parenting classes and by failing to take Andrew to therapy, as Sharon alleged,
that he was not endangering Andrew’s physical safety by failing to look out for his
safety around water; and that there were no problems with his parenting abilities
during his periods of possession, in that he was not disciplining the children
inappropriately, causing Andrew to regress in his behavior, and that he was not
allowing them to be hurt. See Long, 144 S.W.3d at 69–71 (establishing factors in
determining best interests of the child in petition to modify conservatorship order). 
          Far from establishing that the facts in Sharon’s SAPCR were false and were
made without an investigation into their truth or falsity, however, the testimony by
both Sharon and Randall at the show cause and sanctions hearing confirmed the
veracity of the allegations in Sharon’s petition to modify and in her affidavit.
The July 14 TRO Hearing
          The first hearing in which there was testimony on Sharon’s contentions was the
July 14, 2003 show-cause hearing on her TRO, held three days after Sharon had filed
her Emergency Petition and the same day that Randall filed an Ex Parte Response, a
Motion for Alternate Dispute Resolution, and a motion to reappoint Linda Thompson
as the children’s ad litem.


 Randall and the children then left for the cruise and the
hearing was attended only by Randall’s attorney, Thompson, Sharon, and an attorney
substituting for Sharon’s attorney, Van Orman, who was on vacation.
          No witnesses except Sharon were sworn at this hearing. In response to the
court’s question of when she found out about the trip, Sharon testified that the
children had been talking about it, but she knew none of the details as to when they
were leaving and Randall had never told her that he was taking them on a
cruise—testimony consistent with her affidavit. The court then asked what made her
particularly concerned about the trip. Sharon referenced times that the children had
come back with “bruises, scrapes, [and] their clothes are torn”, she testified that the
children had reported that their step-mother was harsh with them; and she explained
that Andrew, the autistic eight-year-old, did not understand about safety around water
and “[h]is father will not put safety gear on him.” The court then asked Thompson,
the newly reappointed ad litem, whether she had any concern that there was
something uniquely unsettling about the cruise. Thompson replied, “From what I
know right this second, based on not very much time, no.” This unsworn,
unpredicated opinion testimony was Thompson’s sole contribution to the hearing.
          In response to her own attorney’s questioning, Sharon testified that Randall
was not taking Andrew to his scheduled visits with therapists and had canceled
Andrew’s therapy 17 times in a row. Again, this concern echoed the concerns
expressed in Sharon’s affidavit. The court then asked the attorney whether he was
describing an ongoing problem, “not something that has happened just in the last few
weeks.” When the attorney replied, “Right,” the court ordered the TRO dissolved
with respect to the cruise and terminated the hearing.
          There is nothing in the testimony at the July 14 TRO hearing on which the trial
court could have based its subsequent finding that the testimony regarding sanctions
deceitfully differed from the testimony in Sharon’s affidavit or that the facts in the
affidavit, or the pleading it supported, were incorrect and deceitful. There was no
testimony to contradict Sharon’s testimony that Randall had not notified her of the
cruise, that she did not know the details of when they were going,


 that Andrew did
not exercise caution around water, that Randall had not taken precautions for
Andrew’s safety around water, that the children repeatedly returned home with
bruises and tales of harsh treatment, or that Randall had repeatedly kept Andrew from
his occupational therapy and had canceled his appointments for the entire month of
July, during which time he alone had possession of the children. 
The October 16 and 22 Hearings on Sanctions
          The record of the October 16 and 22 sanctions hearing also supports the
allegations in Sharon’s affidavit and petition. The only contrary evidence was
Randall’s self-serving testimony on direct examination, which was corrected on
cross-examination.
          Randall admitted that Andrew did exhibit the “video replay” mode complained
of in Sharon’s affidavit, but stated, “It is a general trait of a child that is PDD.”


 He
also admitted he had sent the children to bed without supper, but it was because they
would not eat dinner and was an appropriate discipline. Sharon had mentioned the
children’s returning with sunburns, but had not mentioned bruises. Randall further
testified that the children’s fingernails had been cut “because they needed it.” 
However, Sharon had never alleged that the children had been harmed or that he and
his current wife had not been diligent. He then testified glowingly about his and his
wife’s relationship with the children and testified, without objection, about Sharon’s
credibility.
          On cross-examination, Randall testified that, in fact, Sharon “most likely” had
complained to him about the matters made the subject of her affidavit, that she had
frequently complained about his refusal to communicate with her about the children,
and that he had failed to attend court-ordered, post-divorce therapy sessions. Randall
also testified that he had told Sharon, “we were going on vacation but I don’t think
I told her specifically what we were going to do.” He also admitted that he had not
taken Andrew to therapy, but testified, “he most likely would not have therapy under
my time of visitation.” He did not recall whether he had ever taken Andrew to
therapy between the date of the divorce and the filing of the petition to modify. He
denied knowing that Andrew had trouble being away from his mother for extended
periods and could not recall the details of his advising anyone on the cruise ship
about Andrew’s special needs or fear of water. He admitted that he had never told
Sharon about the trip and had only overheard his son telling her that they were
leaving “Saturday or Sunday.” Finally, after denying that his own children and his
current wife’s children fought, Randall admitted, “Kevin got hit but I don’t think
there was a big bruise there.” In short, in the October 16 hearing, Randall
verified—but dismissed as insignificant—virtually all of the facts underlying the
contentions in Sharon’s affidavit and pleadings. The hearing was recessed. 
          When the hearing resumed a week later, on October 22, Randall testified that
he disagreed with Sharon that Andrew needed a routine, but he refused to talk to her,
and he had had no discussions with her regarding safeguards for Andrew on his July
trip.
          On examination by Randall’s attorney, Sharon testified that she “absolutely”
believed, when she gave her affidavit, that the children’s physical or emotional health
might have been endangered by their “present living environment” with Randall. 
When she attempted to testify that the source of her knowledge was the children’s
statements to her, Randall’s counsel objected that the answer was “non-responsive,”
and the court sustained the objection—but sua sponte on the ground that it was
hearsay. Sharon then admitted that she had not personally witnessed the behavior at
Randall’s house. She also testified that she did not know when the vacation was to
be and did not knowingly wait to file her emergency motion until three days before
the trip was scheduled. She further testified that the children had told her some things
that were true and some that were not, including that their father was taking them to
Mexico, “but there have been many instances where their father tells them things and
they turn around and tell me and I know that it’s not exactly right.” 
          On direct examination by her own attorney, Sharon testified that she had non-suited her petition for modification because there was no longer an emergency, the
vacation having taken place, and because she had requested that the same issues be
mediated, including addressing telephone access, Andrew’s medical and emotional
concerns, medical and educational issues and related costs, a therapist for the
children, and parenting classes for both Randall and herself. The court sustained
Randall’s counsel’s objections to Sharon’s counsel’s questions regarding whether
Randall had attended court-ordered communication enhancement sessions or post-divorce marital counseling, despite Sharon’s counsel’s explanation that these were
part of the underlying reason for the filing of the SAPCR “with lack of
communication on a bunch of different issues and lack of any support from Mr.
Keith.” 
          In short, there is absolutely nothing in the record to overcome the presumption
that Sharon’s SAPCR was filed in good faith concern for her children’s welfare and
that the facts as she stated them in her pleadings were correct and were based on a
reasonable investigation under the circumstances. Specifically, they were based on
the children’s reports of mistreatment in their father’s house since the divorce, their
knowledge of his plans, which he admittedly concealed from Sharon, and Sharon’s
own knowledge of Randall’s refusal to communicate with her, repeatedly missed
therapy sessions for Andrew, Andrew’s needs as an autistic child and lack of caution
around water, the children’s bruises and sunburns on their return from Randall’s
house, Randall’s admitted disagreement with her on the seriousness of these matters,
and Randall’s refusal to attend parenting sessions or post-divorce marital counseling. 
Even taking into account the trial court’s role as the sole judge of the credibility of
the witnesses, and thus discounting everything Sharon said as unworthy of being
considered, Randall’s own testimony confirms Sharon’s allegations in all material
aspects. Thus, I would hold that the trial court’s holding that Sharon’s SAPCR was
groundless and filed in bad faith was arbitrary and capricious and made without
reference to any guiding rules or principles.
Harassment
          The trial court’s conduct at both the July 14 show cause hearing and the
sanctions hearing makes clear that the real basis for the sanctions levied against
Sharon was the trial court’s agreement with Randall’s allegation that Sharon had
known about the cruise for months and yet waited until three days before he was to
leave to file her petition for modification as an emergency motion, knowing that such
delay in filing the petition would hamper his plans and put him to the expense of
defending against her motion for a TRO, as well as Randall’s allegation that Sharon
had refused to mediate her concerns, as required by the divorce decree. In other
words, the real basis for the sanctions motion and order was the trial court’s finding
that Sharon had filed a groundless SAPCR to harass Randall. Construing the trial
court’s intent as the intent to punish Sharon for her refusal to mediate her concern and
for the bad faith timing of a meritless petition, i.e., for harassment—despite the
court’s failure to hold that the SAPCR was filed for purposes of harassment and
despite the lack of any basis for finding her concerns baseless—I turn to the evidence
of the timing of the petition and Sharon’s responsibility for it. 
          At the July 14 TRO hearing, Sharon testified that the timing of the filing of the
Emergency Petition to Modify Parent-Child Relationship was entirely due to her
former attorney, Van Orman, and that she had tried to get the suit filed sooner,
namely around the first of June, when she first found out that Randall was apparently
planning a cruise out of the country with the children. She also testified that she had
not known the details of the cruise until the week of sailing. There was no evidence
at that hearing—which Randall did not attend—that Sharon herself timed the filing
of the petition or that she had known about the cruise and the departure date for
months and set the hearing on the day Randall and the children were to leave in order
to harass Randall.
          At the sanctions hearing, Randall admitted that he had not told Sharon about
his travel plans, but he testified that he overheard his son tell her on the telephone that
they were going on the trip “Saturday or Sunday”; he had then revealed to her that
they were going that week, but “I didn’t give her all specific details. She just knew
we were going that week on vacation. From me, that’s all she heard.” In short,
Randall admitted that he had never informed Sharon about the trip and that she had
learned about it from their son on the week in which the trip was to occur. Randall
also testified that after he was served with Sharon’s Emergency Petition, he called his
attorney and then “we went to Linda’s [Thompson] office and spent several hours of
Linda interviewing the children. Then from there we left to go on the cruise.” He
further testified that his attorney—not Sharon’s—filed the motion to set an
emergency hearing on July 14, the day he was to depart.



          While Randall testified on direct examination that Sharon had refused to
mediate, he admitted on cross-examination that he “misspoke” when he testified that
Sharon had never sought mediation, as required in the divorce decree, and that,
contrary to his earlier testimony on direct examination, he had, in fact, refused to
mediate Sharon’s claims unless Sharon paid all the fees and costs “because I have
no—see, no reason to mediate anything at this point.”
          There is thus nothing in the record to demonstrate that Sharon’s emergency
SAPCR was consciously filed at her insistence and for the purpose of causing great
inconvenience and expense to Randall, that she scheduled the TRO hearing on the
day she had long known he was to leave on the cruise, or that she had refused to
mediate her concerns. In short, there is no evidence to show that Sharon timed the
filing of her petition or the show cause for the purpose of harassing Randall. Thus,
there is nothing in the record to support sanctions grounded in Sharon’s filing a
groundless suit and nothing to show that she filed her SAPCR with the bad faith
intent to deceive the court as to the facts alleged in the petition or for the purpose of
harassing Randall. Nor is there anything to support the trial court’s attributing to
Sharon the timing of the filing of her SAPCR or the scheduling of the show cause
hearing as a basis for sanctions. Thus, there is no relationship between the severe
sanctions levied on Sharon and any sanctionable abuse of the pleadings process on
her part.
          While the trial court could have found the evidence it permitted to be presented
at the sanctions hearing insufficient to establish Sharon’s right to modification of the
divorce decree,


 it could not have reasonably concluded that Sharon’s allegations in
her SAPCR and affidavit were incorrect, were made without a reasonable
investigation, or were filed with the intent to deceive the court or for the purpose of
harassing Randall. In my view, the trial court’s sanctions award was based on a
clearly erroneous assessment of the evidence and a clearly erroneous application of
the law to the facts. It was entered without reference to any guiding rules or principles
of law and was thus arbitrary, capricious, and unjust. See Downer, 701 S.W.2d at
241–42; Alpert, 178 S.W.3d at 410; Randolph, 29 S.W.3d at 276. I would hold that
the trial court clearly abused its discretion in awarding sanctions against Sharon. 
Accordingly, I respectfully dissent. 
 
 
 
          I would reverse the judgment of the trial court and render judgment for Sharon.
 



                                                             Evelyn V. Keyes
                                                             Justice

Panel consists of Justices Taft, Keyes, and Hanks.

Justice Keyes, dissenting.